

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-12-00508-CV

IN THE INTEREST OF D.N. AND D.N., CHILDREN

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CV05034, Honorable William D. Smith, Presiding

May 9, 2013

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Martha, appeals the trial court's order terminating her parental rights to her two daughters, D.N. and D.N. On appeal, Martha contends the evidence is insufficient to support the trial court's order of termination. We will reverse.

Factual and Procedural History

Emergency Removal and First Petition for Termination

In February 2010, the Spearman Police Department was alerted by a local day care facility that two girls, D.N. and D.N., ages two years and ten months, respectively,

at the time, had been left at the facility and no suitable arrangements had been made for them to be picked up. The day care facility delivered the girls into the custody of police, and the police department contacted the Texas Department of Family and Protective Services (the Department), which then took emergency custody of the girls and placed them in a foster home where they have remained since that time. At the time, the younger D.N. was experiencing severe respiratory distress. She was hospitalized the day after she arrived at the foster home and would have to undergo heart surgery a couple of months later to repair a hole in her heart.

We learn that the girls' father, Angel, had moved to Odessa some time earlier and their mother, Martha, had left town days before the emergency removal and claimed to have left the girls in the care of a family friend. Martha had known that the younger D.N. was ill and had been prescribed breathing treatments every four hours for at least a month. Martha had administered only one treatment before leaving town without providing the breathing treatment machine or prescribed breathing medication for D.N. Martha explained that the family friend had breathing treatment supplies for her own children and could simply use her supplies for the younger D.N. in the meanwhile; it is unclear which medicine, if any, had been provided or administered to the younger D.N. during this time. When, it seems, the family friend experienced some injury, illness, or condition which rendered her no longer able or willing to care for the girls, she delivered the girls to the day care and never returned to pick them up. Martha, who was still out of town at that point for uncertain purposes, explained that she talked by telephone to her cousin's wife and the day care staff to try to arrange for the cousin's wife to pick up the children. The day care facility refused to release the girls into the

2

custody of someone who had not been identified as a person authorized to pick them up, a set of circumstances which left the girls in the day care facility's custody. The Department filed its first petition seeking termination of the parents' parental rights on February 8, 2010.

We also learn that, both before and after Department intervention, Martha had engaged in a variety of criminal activity, resulting in arrests relating to controlled substances and to a number of assaults. Martha's continued inability or refusal to abide by the terms of community supervision imposed in connection with her criminal activity ultimately resulted in her being sentenced months later, in January 2011, to five years' incarceration.

Despite Martha's incarceration and her continued aggressive behavior, as suggested from a report of a fight in prison, it appears the Department remained willing to work with the family. To that end and following a hearing in July 2011, the trial court entered an agreed order on August 2, 2011, in which the Department was named permanent managing conservator but both Martha and Angel were named possessory conservators and retained rights of possession and access.[1] The order denied the

---

[1] Based on an excerpt from the July 2011 hearing, it appears the parties agreed to the first order. In this excerpt, the Department also attempted to reserve any previously pleaded grounds for termination and noted the agreement of at least some of the parties to the hearing. Nonetheless and to the extent the Department was attempting to avoid the application of any procedural mechanisms outlined in the Texas Family Code, if we determine that section 161.004 was a necessary ground for termination considering this case's history, the parties cannot agree to circumvent a statutory requirement. While people are generally free to contract, contracts which violate public policy as captured in statutory mandate are unenforceable. See Williams v. Patton, 821 S.W.2d 141, 147–48 (Tex. 1991) (Doggett, J., concurring); see also In re T.M., 33 S.W.3d 341, 347 (Tex.App.—Amarillo 2000, no pet.) (concluding that Rule 11

Department's request for termination of parental rights as relief "not expressly granted" and expressly incorporated a specific Department-designed schedule of weekend visitation meant to facilitate visitation between the girls and their out-of-town father. However, in the months that followed the trial court's order, Angel participated in only two of the ten scheduled visits and made only what appears to be minimal effort to cooperate with the Department. Martha remained incarcerated.

Second Attempt to Terminate

After Angel's lack of cooperation and participation, the Department seemed to have abandoned any goal of reunification when, on April 10, 2012, it filed its second petition seeking termination in the form of its "Petition to Modify" in which it again sought termination of both parents' rights. The Department sought termination of Martha's parental rights on eleven independent bases. See TEX. FAM. CODE ANN. § 161.001(1)

---

agreement which attempted to circumvent time restrictions in Texas Family Code was unenforceable).

In March 2012, several months after its August 2, 2011 order, the trial court entered a judgment nunc pro tunc in which it recited the following in an apparent attempt to memorialize the parties' July 2011 agreement:

> IT IS ORDERED that all grounds for termination previously alleged in this case shall be and are hereby waived at this time and shall be reserved with the right to assert alleged termination grounds which may be relevant in the event of future proceedings.

The viability of previously pleaded grounds for termination would seem to be a matter of judicial reasoning and, therefore, would lie outside the proper scope of a judgment nunc pro tunc. See Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam) (reiterating the well-established rule that a judgment nunc pro tunc can correct a clerical error in the original judgment but not a judicial one). To the minimal extent that the judgment nunc pro tunc's revision may be a matter properly addressable by judgment nunc pro tunc, we conclude that the judgment nunc pro tunc, too, runs afoul of the proposition against agreements to circumvent the law applicable to a case.

4

(A)–(F), (K), (L), (N), (O), (Q) (West Supp. 2012).[2] The Department sought termination of Angel's rights on the basis of constructive abandonment.[3] See id. § 161.001(1)(N).

Following the hearing on September 24, 2012, and by order signed October 31, 2012, the trial court granted the Department's petition seeking termination of Martha's rights on the following five bases: (1) that she knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) that she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) that she constructively abandoned the children who had been in the permanent or temporary managing conservatorship of the Department for not less than six months and (a) the Department had made reasonable efforts to return the children to her, (b) she had not regularly visited or maintained significant contact with the children,

---

[2] Parenthetically, it is arguable that the Department also pleaded section 161.004 by way of one sentence in Paragraph 7 of its petition referring to a change of circumstances. See id. § 161.004 (West 2008). We note, however, that the Department's second request for termination came in the form of a petition to modify, a procedural vehicle which would call for nearly identical language; general modification of a custody order requires a material and substantial change of circumstances of a party affected by the order. See id. § 156.101(a)(1) (West Supp. 2012). So, it is unclear whether the Department alleged section 161.004 as a basis for termination or whether the procedural mechanism used by the Department influenced the language used. Ultimately, as we will explore, see discussion infra p. 9, resolution of this issue will not be necessary because it will become clear from the judgment that section 161.004, sufficiently pleaded or not, did not serve as a basis for the trial court's decision to terminate the parent-child relationships at issue.

[3] Following a hearing on a contest to the father's indigence after trial on this matter, the trial court determined that the father was no longer indigent. After directing the father to pay the required filing fees and giving him two opportunities and a reasonable amount of time in which to do so, by order dated January 17, 2013, this Court dismissed Angel's appeal for failure to pay the required fees. See In re D.N., No. 07-12-00508-CV, 2013 Tex. App. LEXIS 498, at *1 (Tex.App.—Amarillo Jan. 17, 2013, order) (per curiam); TEX. R. APP. P. 42.3(c), 44.3.

5

and (c) she had demonstrated an inability to provide the children with a safe environment; (4) that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children; and (5) that she knowingly engaged in criminal conduct which has resulted in her conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition. See Tex. Fam. Code Ann. § 161.001(1) (D), (E), (N), (O), (Q).

Contentions on Appeal

On appeal, Martha challenges the sufficiency of the evidence as to each predicate basis for termination and as to the trial court's best interest determination. She contends that, when the Court does not consider the previously presented evidence of acts or omissions occurring before the trial court's August 2, 2011 order denying termination, there is insufficient evidence to prove by clear and convincing evidence that Martha's conduct toward the girls satisfied the requisite predicate act or omission under section 161.001(1). The Department responds that the record reveals sufficient evidence of material and substantial changes in circumstances such that the trial court could consider evidence pre-dating its earlier denial. See id. § 161.004.

The procedural history of this case and the arguments Martha raises on appeal present this Court with rather novel issues pertaining to the impact and application of

section 161.004.  See id.  More specifically, because termination had been once denied by the trial court and because Martha contends on appeal that the evidence is insufficient when we consider only the evidence post-dating the order of denial, we must examine if and how section 161.004 applies to this case.

Analysis

The Impact of Section 161.004

A less familiar vehicle through which parental-rights termination is sought, section 161.004 provides the requirements for seeking termination when termination has been previously denied:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
>> (1) the petition under this section is filed after the date the order denying termination was rendered;
>>
>> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
>>
>> (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
>>
>> (4) termination is in the best interest of the child.
>
> (b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

See id.

We begin our analysis of section 161.004's application by examining a case with a similar procedural posture from our sister court: In re K.G., 350 S.W.3d 338, 346–53

7

(Tex.App.—Fort Worth 2011, pet denied). The Fort Worth court framed the issue before it in In re K.G.:

> The dispositive question before us is: Because DFPS sought termination of Mother's parental rights after the trial court rendered an order denying termination after the first termination trial, did DFPS have to plead and prove the grounds in section 161.004 in addition to the grounds for termination under section 161.001, and did the trial court have to make findings thereon?

Id. at 346. In its discussion, the court observed that it remained "unclear from the case law whether, post-recodification, section 161.004 remains the exclusive means to terminate a parent's rights after denial of a prior termination or just a means to admit evidence from a prior termination trial." Id. at 349.

The Fort Worth court applied principles of statutory construction, including legislative history and a detailed analysis of the Texas Family Code's statutory scheme, to arrive at the following two-fold conclusion relating to section 161.004:

> [W]e cannot agree with Mother's contention that the *only* way the trial court could terminate her parental rights here was under section 161.004.
>
> . . .
>
> Rather, using section 161.004 is the only way that the trial court could terminate her parental rights based upon "evidence presented at" the hearing before the trial court issued its . . . denial of the first petition to terminate.

Id. at 352. Ultimately, the court's treatment of section 161.004 was not dispositive to the appeal; the court went on to conclude that evidence of constructive abandonment occurring *after* the order denying termination was sufficient to support termination in that case. Id. at 352–56.

8

We are persuaded by the analysis in In re K.G. and conclude that a trial court can terminate the parent-child relationship, even though it previously denied termination in another order, using section 161.001 alone if termination is sought on *evidence of acts or omissions having occurred since the earlier order in which termination was denied.* See id. at 352. But, to rely on acts or omissions evidence of which has been presented to the trial court prior to the earlier order denying termination, the Department must garner sufficient evidence of section 161.004's elements, including a material and substantial change of the parties' circumstances. See id.

The Bases for Termination

As we proceed, we must remain mindful of the proposition that we can only uphold the trial court's order on a basis that was properly pleaded and was found as a basis for termination in the judgment. See In re J.R.S., 232 S.W.3d 278, 285 (Tex.App.—Fort Worth 2007, no pet.); Vasquez v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 194 (Tex.App.—Houston [1st Dist.] 2005, pet. denied).[4] Even if we were to conclude that the Department's change-in-circumstances reference, see supra note 2, which could be read as tracking the language relating to general custody modification but also sounds in terms of section 161.004(a)(2), was sufficient to satisfy the pleading requirement, we are left to determine whether the trial court's order found termination on that basis. To determine that, we turn to its October 31, 2012 order of termination.

---

[4] We are aware that the Texas Supreme Court heard oral argument on April 23, 2013, in a case which may call upon the high court to revisit and reconsider issues related to the proposition of law as stated in In re J.R.S. and Vasquez. See In re E.C.R., No. 12-0744.

9

Here, the trial court found that five of section 161.001(1)'s bases supported termination of Martha's parental rights. See TEX. FAM. CODE ANN. § 161.001(1) (D), (E), (N), (O), (Q). Nowhere in the trial court's termination order does it refer to section 161.004(a)(2)'s material-and-substantial-change-in-circumstances element. As we read the termination order, section 161.004 did not serve as a ground for termination. [5]

Conclusion: Limitations on Our Review

---

[5] We are aware of this Court's holding in In re N.R.T. in which the Court considered a similar issue relating to the application of section 161.004, in that case in terms of res judicata. See In re N.R.T., 338 S.W.3d 667, 678–79 (Tex.App.—Amarillo 2011, no pet.). Though the judgment in that case did not expressly identify section 161.004 as a ground for termination, In re N.R.T. presumed in the absence of explicit findings on the ultimate issues raised by section 161.004 that the trial court made all fact finding necessary to support the order of termination. Id. at 678. The distinction to be drawn between In re N.R.T. and the instant case—a distinction which we consider pivotal—is that In re N.R.T. involved review of termination following a bench trial at the conclusion of which the trial court entered findings of fact and conclusions of law which "reflect[ed] consideration of evidence of facts predating" the previous order denying termination. Id. After thoughtful consideration, In re N.R.T. arrived at the conclusion that this Court could presume that the trial court made findings to support its termination order. Id. In the instant case, we have no such finding from which to imply any findings related to section 161.004's change-of-circumstances element; we are called on to review a termination order resulting from a jury trial in which the jury was not charged on any issue related to 161.004's change-in-circumstances element. After being charged only on the applicable section 161.001 grounds in support of termination, the jury here was asked only whether the parent child relationship should be terminated, a question to which the jury answered in the affirmative. The trial court's judgment, too, remains silent as to this issue, providing nothing from which we could imply the finding that the parties' circumstances had materially and substantially changed. See TEX. FAM CODE ANN. § 161.004(a)(2). We rely on this distinction between the procedural postures of In re N.R.T. and the instant case to arrive at the conclusion that, in this case, section 161.004 may not serve as a ground for termination of the parent-child relationship.

The trial court's order did not refer to section 161.004 as a basis for terminating Martha's parental rights. Having been persuaded to a degree by our sister court's reasoning in In re K.G., we conclude that it is only by way of section 161.004 that the trial court could have considered the evidence of Martha's acts or omissions which had been presented to the trial court prior to its August 2, 2011 order which, again, named the Department managing conservator, named both parents possessory conservators, and granted the parents possession and access to the girls. The impact of such a conclusion, when section 161.004 does not appear to have served as a basis for the termination order, is that we are unable to consider the previously presented evidence of acts or omissions occurring prior to the trial court's order denying termination; we cannot evaluate the evidence against statutory elements which did not form a basis for the trial court's order of termination. Instead, our review of the evidence must be limited to evidence of predicate acts or omissions under section 161.001 which would support termination and which have occurred or come to pass in the time between the trial court's August 2, 2011 order denying termination and the hearing on September 24, 2012 leading to the instant appeal. That is, "we review the sufficiency of the evidence presented under the specific statutory grounds found by the trial court in its termination order." Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs., 221 S.W.3d 244, 252 (Tex.App.—Houston [1st Dist.] 2006, no pet.).

Taking a snapshot from the record of the parties' situations at the point in time at which termination was denied, we see that the children remained in their foster home where they had been since February 2010, that their father was living in the Odessa area, and Martha was incarcerated, having been sentenced to five years' imprisonment

11

months prior to the order. We have been asked to review the record to determine whether sufficient evidence supports the trial court's order terminating Martha's parental rights. Our review, however, is subject to certain limitations. The procedural history and the posture of this case on appeal, in light of the bases found in the termination order, constrains our review to evidence of acts or omissions having occurred between August 2011 and September 2012.

Because section 161.004 is not at issue, we look to the record for evidence supporting the enumerated grounds found in the order in support of termination. That evidence must be "new," in the sense that it should not have been previously presented to the trial court prior to the first order. And the evidence must support termination of Martha's parental rights, leaving aside termination as it relates solely to Angel. With those limitations in mind, we turn to the applicable standards of review.

Standards of Review

The natural right existing between parents and their children is of constitutional dimensions. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. Holick, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical

12

interests of a child must not be sacrificed merely to preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more of the enumerated acts or omissions and (2) that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. See In re C.H., 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows also that it was in the best interest of the child for the parent's rights to be terminated. See id.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see TEX. FAM. CODE ANN. § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. In re C.H., 89 S.W.3d at 26. We must maintain appropriate deference for the role of the

factfinder by assuming that it resolved evidentiary conflicts in favor of its finding when reasonable to do so and by disregarding evidence that it reasonably could have disbelieved.  See In re J.F.C., 96 S.W.3d at 266.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.  See id. at 266.  "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  Id.  In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  Id.

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations."  In re C.H., 89 S.W.3d at 25.  In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  Id.

Discussion

Now, we turn to the record to determine whether clear and convincing evidence of the relevant requisite predicate acts or omissions required by section 161.001(1) support the order terminating the parent-child relationship between Martha and her two daughters. Again, our scope is limited to the time frame between August 2, 2011 and September 24, 2012.

Evidence presented at a prior hearing

In the series of several status and permanency hearings which were held in this case, the trial court had been presented with evidence relating to Martha's conduct in February 2010 when she left her daughters, one being seriously ill, with a family friend and left town for a number of days without having provided for the sick daughter's medical care. The trial court had also been presented with detailed evidence relating to Martha's ongoing criminal involvement and ongoing prosecutions for such. Notably, the trial court had heard evidence that Martha had been sentenced to five years' imprisonment. Also previously presented to the trial court was evidence relating to the steps Martha had taken and not taken with respect to following the Department's family service plan. Additionally, the trial court heard evidence of the girls' improving conditions in foster care and the progress they were making in terms of therapy and development.

Evidence of Predicate Acts or Omissions by Mother since August 2011

During the period of time between the first order and the hearing leading to the present order of termination, Martha remained incarcerated. She testified that, on

August 13, 2011, she got into a fight with a fellow inmate, apparently resulting in a disciplinary report. She reported on the programs and classes she has enrolled in and her attempts to remain in contact with the girls. The girls have continued to improve. Lee Ann Lefevre counseled the girls after the trial court's order denying termination and during the beginning of the period in which Angel was granted visitation. She explained that the girls, especially the elder D.N., did not react well to the two visits with Angel. Lefevre noted increased anxiety in the elder D.N. immediately following visitation. Lefevre described the decrease in the elder D.N.'s anxiety as she remained away from her father. The most recent therapy session with the elder D.N. prompted Lefevre to report that the elder D.N. is "doing wonderfully." Lefevre also reported that the younger D.N. "was doing okay," despite her physical and developmental limitations resulting from fetal alcohol syndrome and very early, very serious health issues.

Having studied the record for "new" evidence of acts or omissions since the August 2, 2011 order, we examine the grounds found in support of termination and evaluate each with the evidence available for our consideration.

Section 161.001(1)(D) & (E)

A parent's incarceration may negatively impact a child's living environment and well-being by resulting in the parent's prolonged absence from the child's life and the parent's inability to provide support. See In re S.M.L., 171 S.W.3d 472, 479 (Tex.App.—Houston [14th Dist.] 2005, no pet.); see also In re N.K., No. 07-12-00481-CV, 2013 Tex. App. LEXIS 3224, at *22–23 (Tex.App.—Amarillo Mar. 25, 2013, no pet. h.) (recognizing that parent's incarceration resulting from continued criminal activity may

16

be consideration in determining whether child's environment endangered his or her well-being). However, here, evidence of Martha's incarceration had been previously presented to the trial court in several hearings prior to its order denying termination.

The evidence most relevant to subsections (D) and (E) related to the evidence that Martha left town for several days in February 2010 without making appropriate arrangements for their care, especially in regard to the gravely ill younger D.N. Such evidence, however, has also already been presented to the trial court. We see nothing in terms of "new" evidence that would support a finding that either subsection (D) or subsection (E) supported termination of Martha's parental rights.

Section 161.001(1)(Q)

The trial court may terminate a parent's rights upon a finding that termination is in the child's best interest and that the parent committed the following conduct:

> (Q) knowingly engaged in criminal conduct that has resulted in the parent's:
>
>> (i) conviction of an offense; and
>>
>> (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

TEX. FAM. CODE ANN. § 161.001(1)(Q). The record establishes that Martha was sentenced to five years' imprisonment in January 2011. The first "final" hearing was held in July 2011, and the order denying termination was signed on August 2, 2011. So, at the time at which the trial court denied termination of Martha's rights, she had already been sentenced to prison several months earlier, and the Department's reports to the trial court contained evidence of such.

17

While it would appear that the circumstances remained at the time of the hearing resulting in termination, it is abundantly clear that this particular event—Martha having engaged in criminal activity which resulted in her incarceration for more than two years—had already come to pass and had been presented by the Department to the trial court in earlier hearings. To conclude that because she is *still* serving the sentence, evidence of which had already been presented, would be to significantly undermine, if not render entirely hollow, the effect of section 161.004 and the principles underlying it. Evidence had already been presented that Martha had "engaged in criminal conduct" which resulted in the sentence and had, in fact, been sentenced well before the trial court signed its first order denying termination. There is no evidence that had not been previously presented that Martha engaged in criminal activity which resulted in her incarceration for more than two years. See In re J.F.C., 96 S.W.3d at 266.

Section 161.001(1)(N)

The Texas Family Code permits termination upon clear and convincing evidence that termination was in the child's best interest and that the parent committed the following act or omission:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
>> (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
>>
>> (ii) the parent has not regularly visited or maintained significant contact with the child; and

> (iii) the parent has demonstrated an inability to provide the child with a safe environment

TEX. FAM. CODE ANN. § 161.001(N). Initially, we observe that the girls had been in the Department's custody since February 2010, well beyond the six months required by subsection (N); however, that evidence had also been before the trial court throughout the series of hearings in this case.

Delving further into subsection (N)'s elements, we see that the record contains very little evidence that the Department had made any recent efforts to return the girls to Martha. Indeed, the record suggests that the Department's efforts toward reunification after termination was denied were focused almost exclusively on Angel. CPS caseworker Jarrett Stone cited the Department's implementation of family service plans, the administrative duties imposed on the Department in fulfilling their obligations under those plans, and the Department's availability to the parent for questions as indicative of the Department's reasonable efforts to return the children. We learn that Stone did attempt to arrange or locate additional services for Martha while she was in prison though we cannot determine precisely when Stone undertook such an effort—post-denial or simply post-incarceration. We do learn that, despite his efforts, he admittedly could not arrange additional services for her and that she was pretty much on her own after that in terms of finding appropriate services in prison. Very little evidence in the record suggests that the Department made further efforts, efforts beyond those already presented before the order denying termination, to return the girls to Martha.

With regard to the visitation and contact element of subsection (N), Stone explained the Department's policy not to bring children in its care to visit a parent who is

incarcerated. So, it appears from the record that Martha, who had attended some visitation before her incarceration, had no visitation with the girls since she had been incarcerated. Martha explained that she understood that Angel had custody of the girls for some time and tried to send cards to the girls at his address and got no response. Angel testified that Martha did try to send the girls a card or letter to his address, but he maintained that she did so on only one occasion. Stone confirmed that, according to her letter to him, Martha had been under the mistaken impression that the girls were in Angel's custody for some time. Stone testified that Martha sent three to five letters to him for the girls, but he does not provide a definitive time frame that would permit us to determine whether she did so after the August 2011 order or simply after she was incarcerated. Stone later clarified by reference to his notes that Martha had sent through him two letters to the girls since July 2011, the latter one being in April 2012. He added that he believes Martha sent Christmas and birthday cards in 2011.

Based on the record before us, we conclude that the finding that Martha constructively abandoned her daughters is not supported by clear and convincing evidence not previously presented to the trial court. See In re J.F.C., 96 S.W.3d at 266.

Section 161.001(1)(O)

Subsection (O) permits termination, provided that termination is also in the child's best interest, if clear and convincing evidence supports a finding that the parent's conduct satisfied the following ground:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for

20

not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O).

We begin with the following vague testimony from Stone:

Q. Has she failed to comply with the court orders establishing what actions she needed to take in order to get the kids back?

A. Yes, sir.

As we read through the record for evidence relevant to subsection (O), two deficiencies reveal themselves through the testimony: (1) we cannot be certain what it was precisely that Martha was supposed to do, and, consequently, (2) we cannot be certain what it was she failed to do. These two issues are exacerbated by the vagueness of the evidence as it relates to time frames.

Initially, we observe that it is not clear to which "court orders" Stone refers. Later, he identified "a family plan of service" Martha had been given as the source of her obligations. But it becomes clear that what Martha is supposed to do is uncertain when Stone testified as to what Martha was supposed to do in terms of services while in prison: "Basically, I asked her to find any programs available in the prison that were kind of close to her family plan of service." He testified that Martha did contact him regarding the availability of programs and services in prison; she updated him with her participation in parenting classes and AA/NA. He attempted to find other programs or classes to provide additional help to her while she was in prison but was unable to find additional assistance for her. He acknowledged that if there were anything else to be found, beyond what she was doing, she would have to find it herself. He again testified without elaboration that Martha had been given a service plan and had not completed it:

21

Q. Did you give her a service plan to follow or a parenting plan for her to follow?

A. Yes, sir. She has been given a family plan of service.

Q. Did she do that?

A. No, sir, she hasn't completed it yet.

We learn little of the service plan to which he refers: whether and when it was incorporated into a court order or whether it was a family service plan in effect prior to the denial. Simply put, it would seem from this record that no one is certain as to the exact requirements outlined for Martha and with which she was expected to comply.

We see one specific shortcoming when we learn from Stone that Martha was required to provide the Department with certificates of completion of the various programs in which she has participated:

Q. Has [Martha] provided you with a completion or a certification on her AA?

A. Not yet, no sir.

Q. What about on parenting?

A. Not yet, no, sir.

Q. Is that one of the things they are required to do is provide you with a certificate?

A. Yes, sir. We do ask for certificates of completion.

However, it is not clear from the record whether Martha had completed these programs or classes at the time of trial.

By Stone's own testimony, we learn that Martha was directed to just find whatever she could find that was available and "kind of close" to what she needed and it

sounds as though she did. Martha testified as to the programs and classes she has taken while in prison, though we cannot determine whether these were only post-incarceration or post-denial:

> I have taken parenting classes. Cognitive intervention, AA/NA. They didn't have anger management but I did do anger management when I was out, before I was incarcerated. And I was getting my GED to better myself for my children. So whenever I got out of jail I could show CPS that I was making an effort. And I did everything I could that the State allowed me in prison.[6]

She also explained her efforts in getting into AA:

> You had to -- in order for you to get into that class, you had to say you were an alcoholic or a drug addict. That's the only way you could get that class. So -- and I knew it was on the request sheet from CPS for me to complete. So I agreed and I told them that I needed help. And I explained my situation about CPS and they offered -- they allowed me to be in the class.

Martha testified that she had been taking GED classes but was prevented from taking the final exam by having to attend the September 24th hearing. She had, however, already planned to take the next available exam during the week of November 21, 2012.

Stone conceded that Martha's incarceration has played a role in her inability to meet the service plan requirements. Indeed, the Department's policy is not to bring children to the prison to visit an incarcerated parent so that, if visitation was a necessary action, Martha was unable to comply with that requirement. On redirect examination, Stone pointed out that it is Martha's own fault that she was in prison and may not have the ability to perform the services outlined by the plan. And, aside from Martha being unable to complete certain parts of the service plan due to her incarceration, he

---

[6] We learn from the record that her cognitive intervention program certificate indicates that the date of completion was July 26, 2011, before the trial court signed the order denying termination but after the July 2011 hearing.

reminded the trial court of the bigger picture the Department takes of the parent's growth and participation in the process; Martha has failed to take a flattering picture in that regard.

Generally speaking, Texas courts have taken a rather strict approach to subsection (O)'s application. See, e.g., In re P.N.M., No. 11-08-00080-CV, 2009 Tex. App. LEXIS 1881, at *8 (Tex.App.—Eastland Mar. 19, 2009, no pet.) (mem. op.). Subsection (O) looks only for a parent's failure to comply with a court order, without reference to quantity of failure or degree of compliance. See In re J.S., 291 S.W.3d 60, 67 (Tex.App.—Eastland 2009, no pet.). It does not provide a means of evaluating partial or substantial compliance with a plan. Id. Subsection (O) also does not "make a provision for excuses" for the parent's failure to comply with the family service plan. Id. (quoting In re T.N.F., 205 S.W.3d 625, 631 (Tex.App.—Waco 2006, pet. denied)). The burden of complying with a court order is on the parent, even if the parent is incarcerated. See Thompson v. Tex. Dep't of Family & Protective Servs., 176 S.W.3d 121, 127 (Tex.App.—Houston [1st Dist.] 2004, pet. denied).

Despite this seemingly hard line on compliance under subsection (O), there is a limit on how strictly it must be applied. For instance, the Department must provide some evidence that the service plan with which the parent must comply is incorporated in a court order which "specifically establishes the actions necessary" for the return of the child. See In re C.L., 304 S.W.3d 512, 517 (Tex.App.—Waco 2009, no pet.); see also In re D.M.F., 283 S.W.3d 124, 133–34 (Tex.App.—Fort Worth 2009, pet. granted, judgm't vacated w.r.m.) ("No specific order was submitted into evidence or identified as being an order with which [the father] had not complied.").

24

By Stone's own testimony, we learn that Martha was directed to simply find whatever she could find in the way of available programs that were "kind of close" to what she needed, and it seems as though she did. And, while the Department was quick to point out that it is Martha's own fault that she is incarcerated, to conclude that she was unable to comply with the court-ordered actions because she was incarcerated is only to identify a reason for her alleged noncompliance; it lends little, if anything, in terms of showing what action she had to take or that she, in fact, did not take the "actions necessary" to obtain return of the children. In other words, regardless of *why* she could not comply with the requirements, we must still be able to ascertain with which requirements she had to comply and how she did not do so.

Martha makes reference to a "request sheet" but nothing in her testimony identifies with specificity which court order specifically outlined the actions she must take to be said to be in compliance. Stone's testimony suggests she was subject to a do-as-best-as-you-can directive with respect to services, and it appears that Martha did do the best she could, which may or may not have been sufficient; we have very little by which to measure her efforts for compliance.

Based on our reading of the record, we conclude that we are outside the bounds of a strict but reasonable application of subsection (O) here, where we have nothing which clearly and convincingly specifies what Martha was supposed to do to comply or indicates what she did or did not do to be considered noncompliant. Here, the evidence, even when viewed in the most favorable light, is too tenuous and too speculative to create a "firm belief or conviction as to the truth of the allegations sought to be established." See In re J.F.C., 96 S.W.3d at 266.

As mentioned, Stone explained that the Department is not always especially concerned with the technical completion of each and every step of the plan, that it really wants to take a more global picture of the parent's growth and participation. He pointed to her recent altercation while in prison as an indicator that she has not experienced the personal growth or change that the Department is expecting. And, on this record, we may tend to agree that there is some evidence that Martha has not made the changes the Department would have liked in her life, although we recognize we are dealing with rather vague, largely subjective issues in this regard. We even recognize that the record could be read to *suggest* she has not met the court-ordered requirements, whatever they may be, but we qualify that recognition with a reminder that subsection (O) does include a specificity requirement. We also reiterate that the Department "must support its allegations against a parent by clear and convincing evidence; conjecture is not enough." In re E.N.C., 384 S.W.3d 796, 810 (Tex. 2012). When we cannot be certain by reference to this record as to the requirements placed on Martha and cannot be certain, therefore, how she has failed to comply with those requirements, we are not prepared to conclude that clear and convincing evidence supports the trial court's finding that Martha has "failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of [her children]." See TEX. FAM. CODE ANN. § 161.001(1)(O).

## Conclusion

Having concluded that the evidence is legally insufficient to support termination based on section 161.001(1), we reverse in part the trial court's judgment and render judgment denying the Department's petition seeking termination of the parent-child

relationships between Martha and D.N. and D.N. Consequently, the trial court's order signed August 2, 2011, naming the Department the managing conservator of D.N. and D.N. remains in full force and effect as to Martha.[7] See In re J.A.J., 243 S.W.3d 611, 613 (Tex. 2007) (concluding that reversal of termination order does not affect unchallenged conservatorship determination). We remand this cause to the trial court for further proceedings pursuant to section 161.205 of the Texas Family Code and consistent with both the trial court's duties as the court of continuing jurisdiction and this opinion. See TEX. FAM. CODE ANN. §§ 155.001, 161.205 (West 2008); TEX. R. APP. P. 43.2(c); 43.3.


Mackey K. Hancock
Justice


Campbell, J., dissenting.

---

[7] Our disposition of Martha's appeal in no way affects our prior disposition of Angel's appeal. We reverse the trial court's order as to the parent-child relationship between Martha and D.N. and D.N. and reaffirm the trial court's order as to Angel.