

**NUMBER 13-14-00124-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF A.E. AND A.E., CHILDREN

**On appeal from the 135th District Court
of DeWitt County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides
Memorandum Opinion by Justice Benavides**

In this parental termination case, appellant N.E. (Father) challenges the trial court's order terminating his parental rights to his daughter, A.E.1, and son, A.E.2.[1] By two issues, Father asserts: (1) that his affidavit of voluntary relinquishment was insufficient evidence to terminate his parental rights; and (2) that the admission of hearsay testimony regarding the results of his drug tests constituted reversible error. We affirm.

---

[1] We use initials for the family members to protect the children's identities. *See* TEX. R. APP. P. 9.8.

## I. BACKGROUND

The Texas Department of Family and Protective Services (the Department) removed five-year-old A.E.1, a girl, and two-year-old A.E.2, a boy, from their parents' home due to their mother, A.E.'s (Mother's)[2], and Father's drug use.

Kendra Leazer, the children's caseworker, testified that she informed Father that he was going to have a drug test on August 8, 2012 and not to "cut, color, or alter" his hair. On the day of the test, however, she reported that Father "had shaved his head down just short enough where they could not collect a sufficient sample." The drug testing facility took a sample but then labeled it "Specimen Rejected by Lab" because "there was [an] insufficient amount of specimen to complete the testing." Leazer reported that the Department presumes that a drug test would be positive when a person takes affirmative action to thwart it: "if a client fails to show, alters their hair, cutting it, coloring it, trimming it down, [the Department] presume[s] that it's a positive."

On February 22, 2013, Father, Mother, and the Department participated in a mediation regarding the children's conservatorship. At this mediation, both parents signed an Affidavit of Voluntary Relinquishment. The affidavit provides as follows:

<u>Rule 11 Agreement</u>

1. [Mother] shall execute an affidavit of relinquishment of parental rights to the Department as to A.E.[1] and A.E.[2].

2. The Department shall prove its case for termination of [Mother's] rights, based on the relinquishment of parental rights, plus best interest.

3. [Father] shall execute an affidavit of relinquishment of parental rights to the department and this shall be held by the attorney ad litem for the children.

---

[2] The trial court also terminated the Mother's parental rights the children, but she did not appeal the decision and is not a party to this appeal.

2

4. The parties shall prepare an agreed final order naming the department as permanent managing conservator of [A.E.1 and A.E.2] and [Father] as possessory conservator of the children.  The order shall contain the required findings under § 263.503(b), Texas Family Code.

5. [Father] shall obtain housing appropriate for himself and his children.

6. [Father] shall participate in services with a courtesy worker in Travis County, to include ongoing counseling.

7. CPS shall make the referrals necessary to set up a local courts worker and therapist in Travis County.

8. [Father] shall present a plan for reunification to CPS, CASA, and the attorney for the children that includes the following elements:

   (1) Appropriate housing for self and kids.

   (2) A budget sufficient to meet the needs for food, clothing and shelter for himself and the children.

   (3) A list of persons willing to assist [Father] with care of the children if needed (to include information sufficient for CPS to run background checks).

   (4) Car seats appropriate for use of the children.

9. [Father] shall report any significant change in his medical condition to the Department, CASA, and attorney for the children.

10. Prior to actual placement of the children, [Father] shall submit an updated letter from his primary care physician regarding his ability to care for the children.

11. Upon completion of these requirements, the parties shall either set a hearing on the next docket for placement of the children with [Father], or shall submit an agreed order for placement of the children with [Father].

12. After a period of six months following placement of the children assuming placement of the children remains with [Father], one of the parties shall file a motion to modify to name [Father] as managing conservator of the children.

13. Following placement of the children with [Father] and while the [D]epartment remains managing conservator, the Department shall monitor the children's placement to ensure that the children are in a safe environment.  [Father]

shall allow unannounced visits with the children and shall comply with drug [tests] as requested.

14. [Father] shall not allow [Mother] to have contact with or access to A.E.[1] and/or A.E.[2].

15. If [Father] is unable or unwilling to provide a home and appropriate care for the children under this agreement within the time frame laid out in 263.503(b), the attorney for the children shall file [Father's] relinquishment, and the Department shall seek a modification and termination of parental rights based on relinquishment.

16. If [Father's] parental rights are terminated, the Department shall diligently seek an appropriate adoptive placement of the children looking first to family members.

17. Upon entry of an order naming [Father] as managing conservator of the children, the attorney ad litem shall tender [Father's] relinquishment to [Father] or [Father's] counsel.

After this mediation, the court terminated Mother's parental rights. The Department was appointed permanent managing conservator of A.E.1 and A.E.2 and Father was appointed possessory conservator of the children, with the intention to reunify him with A.E.1 and A.E.2.

Leazer scheduled Father's next drug test for April 15, 2013. She testified that Father, again, had cut his hair too short to take an appropriate specimen, so the Department noted the same presumption of a positive drug test in his record. Leazer scheduled a follow-up drug screening for Father on June 26, 2013. This test revealed a positive cocaine result. Leazer, along with a CASA volunteer, discussed the results of this test with Father. Father denied ever using cocaine, but "stated the reason why cocaine would possibly be in his system and test dirty would be from having sexual intercourse with his wife."

On September 19, 2013, Father requested a drug test at a lab not affiliated with the Department, as he felt "there was something with the CPS labs." Father's subsequent

4

drug test at his requested independent lab showed positive results for cocaine and marihuana. On January 8, 2014, at a random home visit, the Department asked Father to submit to an oral cheek swab, which tested positive for marihuana. In light of the positive drug results, the Department filed a Modification of Final Order in Suit Affecting the Parent Child Relationship and Order to terminate Father's parental rights.

Father testified at the hearing. He said that no one told him he was not allowed to cut his hair prior to the August 8, 2012 or April 15, 2013 drug tests. With regard to the other drug tests, Father explained that he is on numerous medications to control his high-blood pressure, HIV-positive status, and injured back. He explained that one of the medications he takes to manage his HIV-positive status, Marinol, has THC, an active chemical found in marihuana, which could trigger false positive results. Father testified that he submitted a letter to the Department from his Family Nurse Practitioner, Tom Hull, FNP, which stated that Father "is taking a prescribed medication that can frequently cause 'false positive' results for THC" and that "further testing may be required on [the Department's] part to delineate the source of the results."

Father also posited that the positive June 26, 2013 drug result was inaccurate because the lab took a pubic hair sample instead of a scalp hair sample, which, according to his attorney, has "different reliability standards and tell[s] something different than standard hair follicles." Father, however, had no medical expert to substantiate this claim. Father also testified that he has "never taken cocaine in his life," explaining that his "blood pressure is too high and the cocaine messes with your blood pressure." Father claimed that he gave a list of his medications to the persons who took his drug tests and asked them to call him if they had any questions. According to Father, he was never contacted.

5

Father explained that he completed all of his court-ordered counseling and underwent two different psychological assessments to regain custody of his children. He also found appropriate housing, even though he claimed it was difficult to do because the Department refused to provide his children's birth and social security records to secure public housing. Father also testified that he was trying to finalize his divorce from Mother, but could not with this open Department investigation. Finally, Father complained that the Department unilaterally stopped his visits with his children after his first positive drug test in June of 2013 without seeking a court order first.

The trial court, after hearing the testimony and considering the exhibits admitted into evidence, made several findings on the record. The court noted that "the purpose of the [Rule 11] agreement was to provide a window of opportunity to [Father] to perform in compliance with agreements that he made with CPS to acquire access to his children and maintain that access." The trial court announced that Father violated the agreement. The court explained that while the letter from Father's family nurse practitioner "could explain the marihuana positive results . . . it doesn't even talk about the positive cocaine results, and there are three positive cocaine tests on three different hair follicle tests."[3] The court made a finding that Father "violated that part of the agreement that required him to not take drugs."

The trial court also noted that part of the agreement forbade Father from having contact with Mother, but Father admitted on the record that he had had sexual relations with Mother during this time and also saw her from time to time. The court explained that it was Father's responsibility to abide by the agreement he signed with the advice of

_____

[3] Only the June 26, 2013 and the September 19, 2013 drug tests were positive for cocaine. The last test, performed on January 8, 2014, was positive only for marihuana.

counsel, and Father did not do so. Accordingly, the court terminated Father's parental rights to A.E.1 and A.E.2. In its written order, the court found "by clear and convincing evidence that [Father] executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights." Father appealed.

## II. APPLICABLE LAW

Parents' rights to "the companionship, care, custody and management" of their children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012). Due process requires the application of the clear and convincing evidence standard of proof in parental termination cases. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2013 3d C.S.). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d at 264; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

A trial court may order termination of parental rights upon finding by clear and convincing evidence that the parent has committed statutory violations enumerated in section 161.001(1)(A) through (T) of the family code, and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), § 161.001(2). The following non-exhaustive list is considered by courts in analyzing the best interests of a child: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of individuals seeking custody; (5) programs available to assist individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency

7

seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *W. B. v. Tex. Dep't of Protective & Regulatory Servs.*, 82 S.W.3d 739, 742 (Tex. App.—Corpus Christi 2002, no pet.).

### III. THE RULE 11 AGREEMENT

By his first issue, Father contends that his affidavit of voluntary relinquishment is insufficient evidence to terminate his parental rights, because the affidavit was executed prior to a previous final order denying termination and the trial court was aware of the affidavit at the time the court found that reunification was in the best interest of the children. In other words, Father argues that use of this affidavit should be barred by res judicata. *See Barr v. Resolution Trust Corp. ex. rel. Sunbelt Federal Savings*, 837 S.W.2d 627, 628 (Tex. 1992) (defining res judicata as preventing the "relitigation of a claim or cause of action that has been finally adjudicated"); *see also* TEX. FAM. CODE ANN. § 161.103 (West, Westlaw through 2013 3d C.S.) (discussing affidavits of voluntary relinquishment of parental rights).

In support of his argument, Father cites *In re D.N.*, 405 S.W.3d 863 (Tex. App.—Amarillo 2013, no pet.). In *D.N.*, the Department first attempted to terminate the parental rights of Martha, the children's mother, because of her illegal drug use, failure to provide medical care for her critically ill youngest daughter, physical abandonment of her daughters, and incarceration in January 2011. *Id.* at 867–68. However, despite these serious issues, in August 2011, the Department chose to name both Martha and the children's father, Angel, possessory conservators with rights to access and possession

8

and sought reunification of the children with their parents. *Id.* The next year, though, in August 2012, the Department again sought to terminate both Martha and Angel's parental rights when Angel missed eight of ten visitations and failed to cooperate with the Department. *Id.* at 868. Martha had remained incarcerated during this period of time. The trial court terminated both parents' parental rights. *Id.*

The Amarillo Court of Appeals held that the trial court erred in terminating Martha's parental rights because it considered evidence against Martha that had previously been considered in a termination hearing, namely, her illegal drug use, failure to provide medical care for her critically ill youngest daughter, abandonment of her children, and incarceration. *See id.* at 871. The court concluded that the Department had not cited section 161.004 of the Texas Family Code, which deals with "material and substantial changes" in the circumstances of a child or parent, as a basis for termination. *See id.*; TEX. FAM. CODE ANN. § 161.004 (West, Westlaw through 2013 3d C.S.). The court concluded that it was "unable to consider the previously presented evidence of acts or omissions occurring prior to the trial court's order denying termination" because the Department had not alleged that Mother's circumstances had materially or substantially changed. *Id.* Instead, Martha's circumstances had remained exactly the same—she was still incarcerated. *Id.*

Here, Father argues that the trial court in the underlying case should not have considered Father's voluntary affidavit of relinquishment because it occurred prior to the court's decision to attempt to reunify the children with Father. However, Father's case is easily distinguishable from *In re D.N.* because, here, the Department *did* prove material and substantial changes in Father's circumstances. Section 161.004 provides as follows:

9

(a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:

    (1) the petition under this section is filed after the date the order denying termination was rendered;

    (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;

    (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and

    (4) termination is in the best interest of the child.

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

*Id.* § 161.004(a)–(b).

At the hearing, the Department cited Father's three positive drug tests on June 26, 2013 (cocaine), September 19, 2013 (cocaine and marihuana), and January 8, 2014 (marihuana) as "material and substantial changes" in Father's ability to parent his children since he signed the affidavit. Accordingly, the trial court could properly consider the affidavit under section 161.004(b).

We conclude that the trial court had clear and convincing evidence that Father failed to pass three drug tests. *See In re J.F.C.*, 96 S.W.3d at 264. The use of illegal drugs constituted "material and substantial changes" in Father's life, TEX. FAM. CODE ANN. § 161.004, which allowed the trial court to consider his previously executed affidavit of relinquishment of his parental rights to his children. *See id.* § 161.004(b). Although Father is correct in pointing out that the trial court's written order only cites the affidavit as grounds for termination, the trial court clearly stated on the record at the termination

10

hearing that Father's consistent illegal drug use and contact with Mother were also reasons for termination. *See id.*; *see also id.* § 161.001(1)(E) (providing that engaging in conduct that endangers the physical or emotional well-being of a child can be a ground for termination); *see also, e.g., State v. Davis*, 349 S.W.3d 535, 538–39 (Tex. Crim. App. 2011) (holding generally that an oral pronouncement controls over a written pronouncement). The trial court also pronounced that termination of Father's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(2).

Further, we note that the argument regarding res judicata was never presented to the trial court and, instead, is presented for the first time in this appeal. *See* TEX. R. APP. P. 33.1 (listing the means by which counsel must preserve error at the trial court level).

In light of the foregoing, we overrule Father's first issue.

## IV. THE ADMISSION OF THE DRUG TESTS

By his second issue, Father asserts that the admission of the drug tests into evidence constituted reversible error because the results were offered through a witness with no personal knowledge of the testing, there was no evidence that the results were scientifically reliable, and the trial court relied almost exclusively on the evidence when determining the outcome of the case.

The record shows that Father objected to both the June 26, 2013 and the September 19, 2013 drug test results only *after* the trial court heard testimony about them. For example, here is the exchange regarding the June 26th test:

| | |
|---|---|
| [Counsel for the Department]: | All right. Now, when is the next time you attempted to take a test? |
| [Leazer]: | The third time I sent him was June 26th of 2013. |

11

. . . .

[Counsel for the Department]:    And what does that report say?

[Leazer]:    It's positive for cocaine.

When counsel for the Department attempted to admit the actual test into evidence, Father then objected as follows: "Judge, I'm going to object to Petitioner's Exhibit Number 2 on the grounds that they haven't laid a predicate sufficient to establish that this is a scientifically valid test, and that it contains hearsay." The Department responded that "we already have it in evidence what this report says, Your Honor." The trial court overruled Father's objection and admitted the test into evidence.

To preserve error for appellate review, the complaining party must make a timely objection specifying the grounds for the objection if the grounds are not apparent from the context; further, the objection must be made at the earliest possible opportunity, and the complaining party must obtain an adverse ruling from the trial court. *See* TEX. R. CIV. P. 33.1. Here, Father should have objected to the testimony of the drug test before Leazer, the Department's caseworker, testified about its results.

Similarly, with respect to the September 19, 2013 drug test, Leazer was asked, "And what were the results of that test?" and she replied, "It was done at Texas Health Center in Victoria and [Father] was positive for cocaine and marihuana." After this testimony, when counsel for the Department attempted to admit the actual test into evidence, Father objected: "Judge, again I'm going to object to improper predicate. They have not laid the scientific basis for this test, and hearsay." Again, this objection was untimely because the contents of the report had already been admitted into evidence

12

through Leazer's testimony. And with respect to the January 8, 2014 test that was positive for marihuana, Father did not object to its admission.

Accordingly, we conclude that Father failed to preserve error on this issue because his objections were untimely or he did not object. *See* TEX. R. APP. P. 33.1. We overrule his second issue.

## CONCLUSION[4]

Having overruled both of Father's issues, we affirm the judgment of the trial court.

_____
GINA BENAVIDES
Justice

Delivered and filed the
21st day of August, 2014.

---

[4] On May 19, 2014, Father filed a motion for leave for an extension of time to file appellant's brief. We carried the motion with this case and now grant it.

13