

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00385-CV

IN THE INTEREST OF M.A.A., A CHILD

On Appeal from the 100th District Court
Collingsworth County, Texas
Trial Court No. 7985, Honorable Stuart Messer, Presiding

February 3, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, M.A., the biological father of M.A.A., appeals the order terminating his parental rights. Through four issues, he contends the evidence was insufficient to support termination. We affirm.

*Evidence*

The Texas Department of Family and Protective Services (the Department) first became involved with the child, M.A.A., after a report was made that an altercation had occurred between her mother and father. Allegedly, M.A. was stabbed by the child's mother, C.D., while the child was present. According to the record, both individuals had

been involved in a prior altercation. M.A., himself, had been prosecuted for committing family violence and was placed on probation.

At the time of M.A.A.'s removal, drug screens were performed on all parties. That of M.A. resulted in a positive test indicating his use of cocaine.

The record further indicates that C.D. was charged with aggravated assault for stabbing M.A., to which charge she pled guilty and received probation. At the time of the hearing, she had been on probation for a year, but had not completed any of the court ordered services, except for anger management. Furthermore, at the time of the hearing, the child resided with M.A.'s sister and her husband in Dallas, Texas.

M.A. testified at the hearing. While doing so, he indicated that C.D. stabbed him while he was "under a no-contact order out of Dallas." According to C.D., the two were arguing about going to a store to buy baby formula when he assaulted her and she responded with a knife. So too did he mention that she had stabbed him on a prior occasion before the birth of their child. Other of his testimony disclosed that 1) he participated in a psychological evaluation but failed to attend parenting classes as recommended by that evaluation, 2) he lived in a homeless shelter, 3) he failed to complete Batterer's Intervention classes, 4) he tested positive twice for cocaine use, 5) he failed to participate in a drug and alcohol evaluation, 6) he was in violation of his probation and had an active warrant out for his arrest, 7) he moved from hotel to hotel before entering the homeless shelter, 8) though he had been employed at one time, he lacked a steady job at the time of the hearing, and 9) he admitted to not completing requirements imposed on him through the service plan, which requirements he was

2

ordered to complete. When asked why he had not completed work on the services ordered, M.A. said:

> When I was staying with my sister, everything was going according to plan. I was taking care of the classes. I was seeing my daughter on a weekly basis. When the landlord found out I was staying there, my sister had no choice but to kick me out, because they were going to get kicked out. I had no choice but to be in the streets, living in my car. I was staying in hotels, and I was trying to come up with some money so I could put down some money on an apartment. I went to my friend's house, and he said: You can sleep here tonight. And in the morning when you wake up, you know, go find a hotel that you can stay at.
>
> At 4:00 in the morning, some guy was texting and drinking and driving, and he slammed right into me and totaled my car. When I lost my car, not only do I have a broken rib right now, it's fractured. Not only did I lose my car, I lost my job, and I also became homeless.

The record also indicated that the child was in the same room in which M.A. and C.D. argued before she stabbed him. Upon being asked, M.A. agreed that it was dangerous for the child to be around the two fighting parents.

When questioned about his future plans, M.A. said:

> Well, the homeless shelter, they - there's a lot of resources right there. They have computers where you can apply online for a job. They have a Texas Work Force. They have food stamps. They help you with housing. They give you a certain amount of time you can stay there. And after you get a job, it's $10 every day. It's like $300 a month. My plan is to get back out there, start working as soon as I can, get out of there, and get a place to live at, and remain clean and do all of my services.

He further stated that he would be returning to Dallas after the hearing.

Regarding his future plans for his daughter, M.A. said he "just want[ed] to get better . . . be able to provide a house for her . . . want[ed] everybody to be happy . . .

3

[m]y plans is - my plan is to do all the services that they require of me, to get another shot, to remain clean and sober, to get a house, and hopefully, see my daughter again; hopefully, get her back in my arms." Yet, he had no concerns for the present placement of his daughter and believed her foster parents were taking care of her. However, he did not want the two people the child lived with to adopt the child. These comments were made despite his having not seen his daughter for about six months.

According to the parents' caseworker, neither parent had 1) taken advantage of the services offered by the Department, 2) a stable home throughout the history of the case, 3) paid child support as ordered by the court, nor 4) attended any services that would have mitigated the need to remove the child from the home. Based on the child's age, both parents posed a risk to the child, said the witness.

On the other hand and in her present placement, M.A. was doing really well and was developmentally on target. Her caretakers were able to meet her physical and emotional needs, while the Department's goal was "adoption by relative."

After the hearing ended, the trial court terminated the parental rights of both M.A. and C.D. The grounds consisted of their 1) "engag[ing] in activities that endangered the physical well-being of the minor child and the emotional well-being of the child," 2) failing "to support their child to the best of their ability since being placed on a plan," and 3) failing "to comply with the Court Orders designed to reintegrate the family." So too did it find "by clear and convincing evidence that it [was] in the best interest of the minor child, [M.A.A.], that the parental rights of both the mother and the father be terminated." Only M.A. appealed.

*Law*

The pertinent standards of review are those we discuss in *In re L.G.,* No. 07-14-00365-CV, 2015 Tex. App. LEXIS 3017 (Tex. App.—Amarillo March 26, 2015, no pet.) (mem. op.), *In re C.C.*, No. 07-12-00500-CV, 2013 Tex. App. LEXIS 5704 (Tex. App.—Amarillo May 8, 2013, no pet.), and *In re D.N.*, 405 S.W.3d 863 (Tex. App.—Amarillo 2013, no pet.). It requires the presence of evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. It also obligates us to 1) defer to the fact-finder's determination of factual issues, 2) assume that the fact-finder resolved conflicts of evidence in favor of its finding when reasonable to do so, and 3) disregard evidence that the fact-finder reasonably could have disbelieved. So too must we look at all the evidence in the light most favorable to the finding when conducting the legal sufficiency analysis.

Next, the evidence need only support one statutory ground for termination and the finding that termination was in the child's best interests. *In re L.G.*, 2015 Tex. App. LEXIS 3017, at *5. One of the several grounds alleged by the Department involved § 161.001(b)(1)(O) of the Texas Family Code. It permits termination if the trial court finds by clear and convincing evidence that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2016).

5

*Issues One and Four – Sufficiency of the Evidence*

In his first issue, M.A. contends that the Department failed to prove termination was in the best interests of the child. In his fourth issue, he attacks termination on ground "O" as set forth above. We overrule each issue.

The evidence shows that 1) the child was removed from a violent and abusive home, 2) M.A. failed to pay child support as ordered by the trial court, 3) being homeless himself, M.A. could provide no stable home for the child, 4) M.A. did not maintain viable employment so he lacked financial resources to support a child, 5) he did not visit the child for the six months preceding termination, 6) he abused illegal drugs, 7) he knew that to secure the return of his child he was obligated to perform specific tasks like attending parenting, Batterer's Intervention, and substance abuse classes and he did not, 8) he failed to fulfill the court ordered directives to complete a psychological evaluation and maintain a drug free lifestyle despite his having reviewed the service plan containing those requirements, 9) he lacked tangible, as opposed to merely hopeful, plans for his daughter, 9) the child was developing in her new environment away from M.A., and 10) the child's caretakers were able to meet her needs.

Generally, Texas courts undertake a strict approach in applying § 161.001(b)(1)(O) of the Family Code. *In re D.N.*, 405 S.W.3d at 877. In doing that, their focus lies upon a parent's failure to comply with a court order; the reasons for non-compliance or the degree of compliance generally are irrelevant. *Id.* The statute does not make a provision for excuses. *Id.*; *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied). Given the evidence we described throughout this opinion (the

reiteration of which being unnecessary), the fact-finder could have formed a firm conviction and belief that M.A. knowingly failed to comply with the provisions of a court order specifying the actions necessary for him to obtain the return of his child. That same evidence, when tested against the factors mentioned in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), is enough to permit a fact-finder to form a firm conviction and belief that termination of the parental relationship with M.A. was in the best interests of the child. Consequently, the record contains both legally and factually sufficient evidence to support at least one statutory ground warranting termination of the parental relationship and a finding that the child's best interests are served by termination.

The remaining issues need not be addressed since they involve the sufficiency of the evidence to support the other statutory grounds upon which termination was based. Our having found one ground to be sufficiently supported by the evidence, review of the others is unnecessary.

The order of the trial court terminating the parental relationship between M.A. and M.A.A. is affirmed.


Per Curiam