**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00348-CV**
_____

**IN THE INTEREST OF K.D.L.**

_____

**On Appeal from the County Court at Law**
**Polk County, Texas**
**Trial Cause No. PC05671**
_____

**MEMORANDUM OPINION**

In this parental rights termination case, M.D.L. (Father) appeals from a judgment that terminated his parental rights to K.D.L.[1] Father raises five issues. In his first issue, he alleges he received ineffective assistance of counsel during the trial. In issues two through four, Father challenges the legal and factual sufficiency of the evidence to support the statutory grounds utilized to terminate his parental rights. Finally, in issue five, Father challenges the finding that termination is in the best interest of K.D.L. We affirm the judgment of the trial court.

_____

[1]At the time of the trial, K.D.L. was nineteen months old.

1

Background

The Texas Department of Family and Protective Services filed a petition for termination and obtained an order of removal when K.D.L. was approximately one month old, following Father's arrest for assaulting K.D.L.'s mother (Mother). Mother signed an affidavit of relinquishment after a monitored return failed.[2] The jury found by clear and convincing evidence that termination of Father's rights to K.D.L. was in the child's best interest and that Father's parental rights should be terminated on the grounds that Father (1) knowingly placed or knowingly allowed K.D.L. to remain in conditions or surroundings which endangered the child's physical or emotional well-being, (2) engaged in conduct, or knowingly placed K.D.L. with persons who engaged in conduct which endangered the child's physical or emotional well-being, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of K.D.L. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O), (2) (West 2014). The trial court terminated Father's parental rights to K.D.L. in a judgment signed on August 21, 2014. Father filed a motion for new trial without a supporting affidavit. In his motion, Father complained about his trial counsel's

---

[2]At the time, Mother had two children. M.D.L. is the father of K.D.L. but not the other child. Mother relinquished her parental rights as to both children and the Department placed both children together with the same foster family.

failure to cross-examine witnesses on unspecified "relevant factual issues[,]" and also about the failure to call any witnesses. The trial court denied the motion for new trial without conducting a hearing.

Ineffective Assistance of Counsel

The statutory right to counsel for an indigent parent in a termination proceeding "embodies the right to effective counsel." *In the Interest of M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also* Tex. Fam. Code Ann. § 107.013(a) (West 2014).[3] To prevail on a claim of ineffective assistance of counsel, the appealing party must show that counsel's performance was deficient and that counsel's errors were so serious as to deprive the parent of a fair trial with a reliable result. *See M.S.*, 115 S.W.3d at 545 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To determine whether counsel performed in a reasonably effective manner, we must take into account all of the circumstances surrounding the case, and "we must give great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable

---

[3]Neither an affidavit of indigence nor an order appointing counsel appears in the clerk's record. The temporary order following the adversary hearing reflects that trial counsel appeared at the hearing, but does not state whether counsel was appointed or retained. During the trial, Father testified that he has monthly expenses of $280 on monthly earnings of $3,000. Because trial counsel's motion to withdraw states that he was appointed by the court, we assume he was appointed as counsel for an indigent parent under section 107.013 of the Texas Family Code.

professional assistance,' including the possibility that counsel's actions are strategic." *See id.* (quoting *Strickland*, 466 U.S. at 689). We cannot speculate about counsel's rationale from a silent record. *In the Interest of S.J.T.B.*, No. 09-12-00098-CV, 2012 WL 5519208, at *11 (Tex. App.—Beaumont Nov. 15, 2012, no pet.) (mem. op.). To determine prejudice, we consider whether "'there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different.'" *M.S.*, 115 S.W.3d at 550 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) and *Strickland*, 466 U.S. at 687).

In his brief on appeal, Father complains that his trial counsel failed to object to testimony about past incidents of violent behavior by Father that were not directed toward K.D.L. However, he fails to identify any clearly inadmissible evidence that would have been excluded if subjected to a valid objection by counsel. He argues that counsel should have objected to evidence of violence by Father that was not directed toward K.D.L. However, "endangering conduct is not limited to actions directed towards the child." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Evidence of endangering conduct may include the parent's actions before the child's birth, and may include incidents of domestic violence. *Id.* at 345-46.

In this case, the evidence of Father's violent conduct was probative of the issues before the jury. Mother testified that she left Father because he physically abused her on several occasions. She stated that she obtained a protective order against Father, and he violated the order. According to Mother, Father was abusive only when he drank alcohol, and that he drank alcohol several times a week. Mother recalled four incidents of physical violence by Father against her, including one time when he broke a window and he was charged with criminal trespass.

Mother also described an argument that occurred shortly after they separated, when Father was staying at a hotel and Mother brought K.D.L. to visit Father. Angered because Mother did not want Father to keep K.D.L. overnight, Father became violent and broke the cell phone Mother was using and came after Mother. Mother left K.D.L. with Father for the visit because she thought there was nothing else she could do. Father later called Mother and promised he would let Mother have K.D.L. back if Mother returned that evening and talked to him. Mother testified that when she returned, Father slammed her onto the bed and held her by the throat, then pushed her against a wall and punched the wall beside her head, causing an abrasion to her face in the process. Mother stated she went to the police station to file a report, and the officer returned with her to Father's motel

5

room and arrested Father on an outstanding assault charge involving a different female.

Father admitted he "put [Mother] against the wall" and "hit above her head and put an indention in the wall," and he admitted that he choked Mother, but he denied that their argument was about Mother wanting to leave with K.D.L. In a non-responsive answer to a question about assaulting Mother, Father identified the name of the assault victim for the charge that resulted in his arrest at the motel and added that he also had gotten in a fight with another person. Father stated that he spent two months in jail for violating Mother's protective order. He also admitted to arrests for assaulting three other people, including the mother of his other child, while she claimed to be pregnant. Father admitted, "I pled guilty on every one."

Counsel sought to lessen the impact of the evidence of Father's violent behavior toward Mother, by developing testimony that K.D.L. was asleep when he punched the wall next to Mother's head, and that the assault he was arrested for at the motel occurred before K.D.L.'s birth. Father admitted he violated Mother's protective order, but he claimed that Mother initiated the contact. Father stated that since K.D.L.'s birth, Father has pled guilty to three different misdemeanor offenses. However, he told the jury that he had not committed any new offenses in the last year. During the trial, Father was arrested for assault as a result of a fight

he had with his brother. The Department called Father back to the stand on the second day of the trial to question him about the assault on his brother. This evidence was relevant to the credibility of his testimony the previous day, when he claimed he had stopped committing offenses and had "done everything right," that his "anger problem" is "obviously not bad[,]" and "I've been doing all my stuff that I need to do. And I haven't been getting mad about nothing, getting into no fights or anything like that."

Father also complains that his counsel failed to object to testimony by the daughter-in-law of K.D.L.'s foster parents. She stated that she and her husband wanted to adopt K.D.L. and K.D.L.'s half-brother. Father argues that trial counsel should have objected to the daughter-in-law's testimony that she and her husband became a foster-adoptive home in Oklahoma, where they live, strictly for the purpose of adopting Mother's two children. Father argues this evidence was prejudicial because the jury might believe that a family was immediately available if Father's rights were terminated. Counsel's failure to object does not demonstrate deficient performance, however, because the record does not show that this evidence was unfairly prejudicial. *See* Tex. R. Evid. 403.

Pointing to an instance where the trial judge cautioned the child's ad litem attorney about an argumentative question, Father contends trial counsel should

have objected to this "line of questioning." The trial court may exercise reasonable control over the mode of interrogating witnesses. *See* Tex. R. Evid. 611(a). On this record, we conclude that trial counsel could, in the exercise of a reasonable trial strategy, decide that the trial court was exercising adequate control and that an objection was unnecessary.

With respect to the failure of Father's trial counsel to call any witnesses, Father concedes that the record is silent about why counsel did not call any witnesses. But, he suggests the trial court should have conducted an evidentiary hearing on Father's motion for new trial. Father did not request an evidentiary hearing on his motion for new trial, and the trial court could reasonably conclude that an evidentiary hearing was unnecessary. Without knowing what evidence could have been developed at a hearing, if one had been requested, we cannot determine whether counsel's failure to call witnesses to testify for Father prejudiced his defense. *See S.J.T.B.*, 2012 WL 5519208, at *11.

The record does not reveal that trial counsel's performance was deficient or that Father was deprived of a fair trial as a result of counsel's alleged unprofessional errors. *See M.S.*, 115 S.W.3d at 545. We overrule issue one.

Legal and Factual Sufficiency

"The decision to terminate parental rights must be supported by clear and convincing evidence." *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014). A judgment will be affirmed if a parent committed one or more predicate acts or omissions and termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West 2014); *see also J.L.*, 163 S.W.3d at 84.

In reviewing the evidence for legal sufficiency, we consider "'all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *J.L.*, 163 S.W.3d at 84-85 (quoting *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume a factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and "'disregard all evidence that a reasonable factfinder could have disbelieved[.]'" *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266). When we review a termination of parental rights for factual sufficiency, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266;

9

*see also In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266.

Grounds for Termination

Mother testified that Father has a drinking problem and he becomes violent and verbally abusive when he is consuming alcohol. Father admitted that he physically assaulted Mother, that he pled guilty and served jail time for the assault, and that he later went to jail for violating the protective order that Mother obtained against him.

The physical abuse of the child's other parent can support a finding of child endangerment under section 161.001(1)(E) of the Texas Family Code. *In the Interest of A.G.F.*, No. 09-13-00452-CV, 2014 WL 580736, at *3 (Tex. App.—Beaumont Feb. 13, 2014, no pet.) (mem. op.); *In the Interest of C.A.B.*, 289 S.W.3d 874, 886 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *In the Interest of C.E.K.*, 214 S.W.3d 492, 496-97 (Tex. App.—Dallas 2006, no pet.). Abusive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of section 161.001(1)(D), because violence in a home is part of the "conditions or surroundings" of a child living in that home. *In the Interest of*

10

*C.L.C.*, 119 S.W.3d 382, 392-93 (Tex. App.—Tyler 2003, no pet.); *In the Interest of I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.); *In the Matter of B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). The jury could form a firm belief or conviction that by physically abusing Mother, Father endangered K.D.L. and placed K.D.L. in conditions or surroundings which endangered K.D.L.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E).

Evidence that may weigh against a finding of endangerment includes Mother's statement that she received only minor injuries in the assault in the motel room and her testimony that Father "barely touched" her when he punched the wall, as well as Father's testimony that K.D.L. was asleep on the bed on the other side of the room when he assaulted Mother. Nevertheless, based upon the other evidence in the record the jury could reasonably conclude that Father engaged in an endangering course or pattern of conduct when considering the incident in the hotel room and the other choking incidents, the multiple assaults causing minor injuries and property damage, violations of the protective order, the incarcerations that Father experienced as a consequence of his criminal conduct, and his assaults upon others. Accordingly, we conclude that the evidence that may weigh against termination is not so significant that a reasonable jury could not have reconciled

11

the evidence in favor of finding endangerment. *J.F.C.*, 96 S.W.3d at 266. We overrule issues two and three.

The jury also found that Father failed to comply with the court-ordered family service plan. *See* Tex. Fam. Code Ann. § 161.001(1)(O). Father argues that the Department failed to prove he failed to comply with the court-ordered service plan because Father's signature does not appear on the Family Service Plan that was admitted into evidence at the trial.

Although the service plan that appears in the record is not signed by Father, the existence of the plan and Father's notice of and participation in the plan was undisputed at trial. K.D.L.'s caseworker testified that she met Father in the jail, and Father stated that he would cooperate with the Department after he finished serving his jail sentence. Father contacted her after his release, and she set up services for him in accordance with the Family Service Plan. Mother and Father had similar service plans, although Father was required to take anger management due to his history of assault. The caseworker referred Father to parenting classes and counseling, and informed Father that he was required to go to a particular facility for an Alcohol Drug Abuse Council (ADAC) assessment.

Father testified that he started working on the service plan as soon as he got out of jail. He testified he kept employment with one company or another from his

release until trial. He stated that he took six of the required eight parenting classes, went to counseling, and took anger management classes. Father admitted that he failed to undergo an ADAC assessment, and admitted he failed to meet the service plan requirement to get stable housing. Father stated that he never found stable housing because he was always traveling for his work. He told the jury he was staying with relatives at the time of the trial, but he admitted he was almost never there.

Section 161.001(1)(O) "looks only for a parent's failure to comply with a court order, without reference to [the] quantity of failure or degree of compliance." *In the Interest of D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.). Father admitted that the service plan required his participation in an ADAC assessment, required completion of eight parenting classes, and required him to obtain and maintain safe and appropriate housing. He admitted that he failed to meet each of those requirements. Accordingly, the jury could form a firm belief or conviction that Father failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of K.D.L. *See* Tex. Fam. Code Ann. § 161.001(1)(O). Therefore, we conclude that the jury's finding with regard to section 161.001(1)(O) is supported by legally and factually sufficient evidence. We overrule issue four.

## Best Interest

Regarding the child's best interest, a court considers a non-exhaustive list of factors when determining what is in the best interest of the child and in determining whether the child's parents are willing and able to provide the child with a safe environment: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individual seeking custody; (5) programs available to assist this individual to promote the best interest of the child; (6) plans for the child by this individual or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014).

Father entered the foster care system at age ten and remained there while his mother was in prison until he aged out of the foster care system in 2006. Mother testified Father was abusive to Mother, but Mother described Father as a "good dad[,]" even though she stated she had never seen him "be a full-time dad." Mother stated that Father was attentive when he was with the children. Father denied having a problem with alcohol, but according to Mother, Father drank frequently

14

and to excess. And, when he was intoxicated Father became emotionally and physically abusive. Facebook posts showing Father with alcohol and joking about how much alcohol he consumed, and his arrest for fighting the evening between the two days of the trial, demonstrated Father continued to drink alcohol and had an ongoing problem with getting into fights. Accordingly, a reasonable jury could have disbelieved Father's testimony that he had stopped drinking and fighting, and could have discounted Mother's testimony that Father was an attentive parent when he was with her children.

As a consequence of his incarceration and K.D.L.'s removal, Father had little opportunity to bond with K.D.L. He accomplished five one-hour visits in the first eight months of 2014. On the other hand, the record demonstrated that K.D.L. has bonded with the foster family with whom she and her four-year-old half-brother had been living for approximately ten months at the time of trial. Her foster father stated that in the children's minds, their foster parents were their grandparents. He said it would affect the children if they were separated. The foster parents and their adult son and his wife were both interested in adopting the children.

The Department considered Father's sister for K.D.L.'s placement, but the sister did not respond to the Department's request for information. The

Department's goal is unrelated adoption. Mother stated that her children were "doing really great" in their current foster placement and she decided to relinquish her rights so her children would not be "bouncing around through CPS[.]" Father testified that if K.D.L. were returned to him he would ask his aunt to help him until he could get "on [his] feet[,]" at which time he would then "rent a place." Father told the jury he gave the Department the names of several family members who could pass a background check to obtain placement through the Department, but to his knowledge the Department never followed up on that information.

Father admitted he paid no child support for K.D.L. Father testified to monthly earnings of about $3,000 per month at his current employment, which he had held for three months at the time of the trial. He testified that he paid $280 per month in child support for his other child with another woman. At the time of the trial, Father was living with relatives; and, he did not own a vehicle or maintain a driver's license. When asked why he did not pay child support for K.D.L., he stated it was because neither he nor Mother had custody of K.D.L.

Father suggests that his lack of parenting skills results from his childhood in the foster care system. He argues that the record does not demonstrate that terminating Father's rights is in K.D.L.'s best interest because Father is neither addicted, nor mentally challenged, nor destitute.

16

If, in light of the entire record, no reasonable juror could form a firm belief or conviction that termination was in K.D.L.'s best interest, then the court must conclude that the evidence is legally insufficient. *See J.F.C.*, 96 S.W.3d at 266. Father's failure to complete services and other counseling, as well as his continued alcohol use and violent behavior, along with other evidence in the record, weighs strongly in favor of termination. Father denied alcohol abuse, but the testimony in the record indicates his relationship with Mother ended because he had a drinking problem and abused her physically. Additionally, Father admitted he assaulted the mother of his other child, and he had assaulted other people. Father had stable employment when he was not incarcerated, but he made no effort to provide for K.D.L. financially. Father's lack of concrete plans at the time of trial to care for K.D.L., the evidence of the Department's success in obtaining a stable environment for K.D.L. with the current foster family, and the demonstrated instability of Father's lifestyle and his relationships also weigh heavily in favor of termination.

Considering the *Holley* factors and the evidence at trial, we conclude the jury could reasonably form a firm belief or conviction that termination of Father's parent-child relationship with K.D.L. is in the child's best interest and that the evidence to the contrary is not so significant that a factfinder could not reasonably

17

form a firm belief or conviction that termination is in K.D.L.'s best interest. *See id.*; *Holley*, 544 S.W.2d at 371-72. We conclude that the evidence at trial, including the evidence summarized above, is legally and factually sufficient to support the jury's finding. We overrule issue five.

## Conclusion

Having concluded that the evidence is legally and factually sufficient to support the judgment that M.D.L.'s parental rights to K.D.L. should be terminated, and that the record does not support a conclusion that ineffective representation by trial counsel prejudiced Father and deprived him of a fair trial and just result, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 29, 2014
Opinion Delivered November 6, 2014

Before McKeithen, C.J., Kreger and Johnson, JJ.

18