

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-16-00026-CV

_____

IN THE INTEREST OF Z.B. AND Z.B., CHILDREN

On Appeal from County Court at Law No. 1
Randall County, Texas
Trial Court No. 9531-L1; Honorable Jack Graham, Associate Judge

July 12, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, M.B., appeals the trial court's order terminating his parental rights to his daughter and son, Z.B. and Z.B.[1] By three issues, he questions whether (1) he was given proper notice of the petition seeking to terminate his parental rights filed by Appellee, the Texas Department of Protective and Regulatory Services, when he met with the Department's caseworker after the petition was filed but was later served by

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014). *See also* TEX. R. APP. P. 9.8(b). In the same proceeding, the mother's parental rights were also terminated; however, she did not appeal.

posting; (2) the evidence is legally and factually insufficient to support termination; and (3) the trial court erred in finding that termination was in his children's best interest. We reverse and render the order terminating M.B.'s parental rights and remand for further proceedings concerning matters pertaining to the parent-child relationship.

BACKGROUND

Z.B. and Z.B. were first removed from their home in 2012. On May 11, 2012, the Department filed suit seeking termination of both parents' parental rights. On February 13, 2014, after a mediated settlement agreement, the trial court appointed the Department as permanent managing conservator of both children and both parents were named possessory conservators.[2] The trial court signed its *Final Order in Suit Affecting the Parent-Child Relationship* on April 25, 2014. While the children were in the Department's care in Amarillo,[3] M.B. complied with his service plan. He then moved to Killeen with his wife, stepdaughter, and their toddler twins. The Department facilitated visitation with Z.B. and Z.B. by moving them to a foster home in Killeen where Appellant was able to visit them and work his services.

When M.B.'s wife's mother passed away, they moved back to Amarillo in July 2014. At that time, Z.B. and Z.B. were moved to a group home in Lubbock. The following month at a placement review, M.B. was granted unsupervised visitation every other Saturday for four hours. After exercising one unsupervised visit in September 2014, M.B.'s vehicle was stolen and wrecked and he was unable to make trips to

---

[2] The children's biological mother eventually signed an affidavit relinquishing her parental rights.

[3] There is nothing in the record to showing where the children lived in Amarillo while in the Department's care.

2

Lubbock for scheduled visits. His wife's vehicle was unreliable and he did not wish to travel long distances in it with his family.

As a result of his missed visits, visitation was suspended at a subsequent hearing in January 2015. A month later, the Department again pursued termination of his parental rights by filing a *Petition to Modify Prior Order in Suit Affecting the Parent-Child Relationship*. The Department attempted to personally serve M.B. several times but could not locate him and eventually obtained service by publication. M.B. and his wife had separated and he had moved several times and also changed jobs several times.

Despite being served by publication, M.B. did appear at the final hearing and was represented by counsel. Following the presentation of evidence, the trial court terminated M.B.'s parental rights citing two statutory grounds. Under section 161.001(b)(1)(N), the trial court found that M.B. constructively abandoned his children who had been in the Department's care for not less than six months and that the Department had made reasonable efforts to return the children, M.B. did not regularly visit or maintain significant contact with his children, and he demonstrated an inability to provide them with a safe environment. Under section 161.001(b)(1)(O), the trial court found that M.B. failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of his children who had been in the Department's care for not less than nine months as a result of their removal under chapter 262 for abuse or neglect. TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O) (West Supp. 2015). The trial court also found that termination was in the children's best interest. *Id.* at 161.001(b)(2).

3

Initially, the case was presented as an *Anders* appeal with M.B.'s former counsel representing the appeal was without merit. Upon review of the record, this court found that arguable issues existed that might support the appeal. The appeal was abated and the cause was remanded for appointment of new counsel to brief sufficiency of the evidence and any other issues that might support the appeal. *In re Z.B. and Z.B.*, No. 07-16-00026-CV, 2016 Tex. App. LEXIS 2458, at *5 (Tex. App.—Amarillo March 8, 2016, order). Newly appointed counsel filed a brief on the merits raising issues on service by publication and challenging the sufficiency of the evidence to support termination and the trial court's best interest finding.

ISSUE ONE—SERVICE BY PUBLICATION

M.B. asserts that service by publication was insufficient to give him proper notice of the Department's suit to modify the prior order in which he was appointed possessory conservator. Specifically, he complains he was not provided with a copy of the petition for modification. *See* TEX. R. CIV. P. 106. The Family Code authorizes service by publication as in other civil cases to "persons entitled to service of citation who cannot be notified by personal service or registered or certified mail and to persons whose names are unknown." TEX. FAM. CODE ANN. §102.010(a) (West 2014).

The Department's motion for substituted service filed on August 12, 2015, recites that on May 11, 2012, the Department filed its *Original Petition* seeking termination of M.B.'s parental rights. That petition was resolved by final order on April 25, 2014. A new proceeding was initiated by the Department on February 19, 2015, in a *Petition to Modify Prior Order in Suit Affecting Parent-Child Relationship*. That petition was amended on July 27, 2015, by adding grounds for termination; however, the

4

Department's motion for substituted service does not mention the subsequent pleading, only the original petition.

The defective motion for substituted service notwithstanding, M.B. appeared at the final hearing and was represented by counsel. Once he made a general appearance, he waived his right to complain about the lack of personal service. *In re D.M.B.*, 467 S.W.3d 100, 103 (Tex. App.—San Antonio 2015, pet. denied). Issue one is overruled.

ISSUE TWO—STATUTORY GROUNDS FOR TERMINATION

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes (1) one or more acts or omissions enumerated under section 161.001(b)(1) and (2) that termination of that relationship is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2) (West Supp. 2015); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

Only one statutory ground is required to support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Although evidence presented may be relevant to both the statutory grounds for termination and best interest, each element must be established separately and proof of one element does

not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002).

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d at 26. The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a

6

firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

M.B. challenges the sufficiency of the evidence to support termination under subparagraphs (N) and (O). After careful review, we agree with M.B. that the evidence is legally insufficient to support either ground for termination.

SECTION 161.001(b)(1)(N)

Parental rights may be terminated under subparagraph (N) if the trial court finds that (1) a parent has constructively abandoned a child who has been in the permanent or temporary conservatorship of the Department for not less than six months, (2) reasonable efforts have been made to return the child, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. *See In re A.S.,*

261 S.W.3d 76, 88-89 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). If there is insufficient evidence of any of the four elements, termination under subparagraph (N) fails. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied).

The first element is undisputed. The children had been in the Department's care for the requisite period of time. The Department's implementation of family service plans, which appear in the record after it was supplemented three times, are ordinarily considered a reasonable effort to return a child to its parent. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.). The Department established that M.B. did not regularly visit or maintain contact with his children while they were in Lubbock. However, the prolonged period of missed visits is not solely attributable to M.B. After missing several visits due to transportation problems,[4] the Department took steps to have his visits suspended and pursue termination proceedings. The suspension resulted in M.B. not being able to visit his children. Assuming, arguendo, that the Department established M.B.'s failure to maintain contact with his children, it did not, however, establish the final element under the heightened standard of review applicable in parental termination cases.

During the relevant time period considered by the trial court,[5] the children were either in a foster home or in a group home. The Department did not present evidence that M.B. was unable to provide them with a safe environment. To the contrary, M.B. was married and had a stepdaughter and twins. Even though he testified that he and

---

[4] He testified his vehicle was stolen and wrecked, his wife's vehicle was unreliable transportation to drive to Lubbock, and he did not have sufficient funds to purchase another vehicle at that time.

[5] A prior court order regarding placement of children is *res judicata*. The trial court sustained several of M.B.'s objections to questions on matters related to the prior order. *In re D.L.W.*, No. 07-15-00243-CV, 2015 Tex. App. LEXIS 12372, at *9 (Tex. App.—Amarillo Dec. 4, 2015, no pet.) (mem. op.).

8

his wife were separated at the time of the final hearing, M.B. also testified his wife was supportive of his relationship with Z.B. and Z.B. She was allowing him to visit her daughter and their twins without hesitation and the Department did not have any concerns with M.B.'s relationship with his twins. During the separation, M.B. was living with his mother and his wife was living with her father. No evidence was presented showing that either home was an unsafe environment for M.B.'s children. *Cf. In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (describing an unsafe environment to include leaving a child with an inappropriate caregiver, the child testing positive for cocaine, and a failed home study of a relative as a possible placement).

Additionally, M.B. attempted to remain employed, and when unemployed, he performed lawn work to support his family. He did suffer a foot injury which kept him from working for a period of time and he pursued disability. There was no evidence of abuse toward his children or his wife. There was no evidence of alcohol abuse or criminal conduct during the relevant time period. M.B. did testify he used marihuana once. However, a parent's mistake rather than a habit should not impede the Department's goal of reunification especially where, as here, the evidence established that adoption was not an option.[6]

The Department presented evidence that both children took psychotropic medications to manage their moods and outbursts. M.B. testified he preferred they not be medicated, and while under his supervision without medication, he had no behavioral

---

[6] The record established that Z.B. and Z.B. are black and have behavioral issues. During rigorous cross-examination, the children's counselor acknowledged the difficulty in having non-white children with behavioral issues adopted, although she had seen successful adoptions of non-white children. The Department's caseworker testified during cross-examination that there was no one to adopt M.B.'s children.

issues with them. When the children's counselor was asked whether it would be detrimental to take the children off their medication, the trial court sustained an objection that she was not qualified to answer a medical question. Thus, no medical evidence was presented that M.B.'s reluctance to medicate his children would prove unsafe for them. We conclude the Department failed to establish the final element of subparagraph (N), and thus, the evidence is legally insufficient to support termination on that ground.

SECTION 161.001(b)(1)(O)

Parental rights may be terminated under subparagraph (O) if the Department establishes the children were removed under chapter 262 because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the child; and the parent failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d at 278-79. The Supreme Court has broadened the "abuse or neglect" elements to include risks or threats of the environment in which the child is placed. *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013).

This court has held numerous times that failure of the appellate record to contain a court order establishing the actions necessary for a parent to obtain the return of his child defeats a termination order based on subparagraph (O). *In re C.C.*, No. 07-15-00220-CV, 2015 Tex. App. LEXIS 10137, at *9-10 (Tex. App.—Amarillo Sept. 29, 2015, no pet.) (mem. op.); *In re B.P.*, No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127, at *4 n.4 (Tex. App.—Amarillo July 25, 2014, pet. denied) (mem. op.); *In re D.N.*, 405 S.W.3d 863, 878 (Tex. App.—Amarillo 2013, no pet.); *In re Q.W.J.*, No. 07-10-00075-CV, 2011

Tex. App.—LEXIS 6635, at *28 (Tex. App.—Amarillo Aug. 18, 2011, no pet.) (mem. op.); *In re B.L.R.P.*, 269 S.W.3d 707, 711 (Tex. App.—Amarillo 2008, no pet.). The clerk's record in this case was filed piecemeal. The original volume and three supplemental volumes have been filed. However, nowhere in the record is there an order establishing the actions necessary for M.B. to obtain the return of his children. A family service plan that is not incorporated in a court order does not suffice. We conclude the evidence is legally insufficient to support termination of M.B.'s parental rights under subparagraph (O). Issue two is sustained.

ISSUE THREE—BEST INTEREST § 161.001(b)(2)

By his final issue, M.B. maintains the evidence is insufficient to support the trial court's best interest finding. Again, we agree. The Department was required to prove by clear and convincing evidence that termination of M.B.'s parental rights was in his children's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable factfinder could have formed a firm belief or conviction that termination of M.B.'s parental rights was in his children's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. The Supreme Court has set out additional factors to consider when determining the best

11

interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d at 249-50. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d at 677. Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). *See also* § 263.307(a) (prompt and permanent placement in a safe environment is presumed to be in a child's best interest).

Z.B. and Z.B. are very bonded to each other and their counselor recommended they remain together. M.B.'s daughter is one year older than his son. According to their counselor's testimony, M.B.'s daughter feared her biological mother but had a strong connection to her father, was always excited to see him, and expressed her love for

12

him. The counselor's notes reflect that M.B.'s daughter spoke about M.B. consistently from July 2014 until January 2015 (when the Department suspended M.B.'s visitation). The children's counselor testified that the daughter stated she wanted to be adopted; however, during cross-examination, clarification was offered that "adopt" is a word commonly used in a children's home and the counselor testified "I'm sure she just heard" the term. She also testified that she did not believe M.B.'s daughter "fully understood what it meant." She also testified that M.B.'s daughter raised the subject of adoption after the counselor began discussing it with her.

M.B.'s son's wishes fluctuated on his desire to be adopted. No testimony was offered on whether he understood the meaning of adoption. The counselor offered the usual testimony that the children need "a permanent, stable, loving, nurturing family" and she believed they could be adopted, but when asked whether there were any potential adoptive parents, she answered, "I don't know." During cross-examination, the counselor acknowledged the statistics and difficulty in having non-white children adopted. Nevertheless, she recommended termination of M.B.'s parental rights so the children could be adopted.

The Department's caseworker testified that she was assigned to this case in August 2014. Most of her testimony regarding the children was based on notes from the Department's file. She testified that the foster home in Killeen had given notice to relinquish care of the children for behavioral issues. They were then placed in the group home in Lubbock although they had originally been in the Department's care in Amarillo when the case originated. She testified that while in the Department's care, the

children made some improvement on their behavioral issues. Regarding adoption, on cross-examination, she confirmed there is no one waiting to adopt Z.B. and Z.B.

There was no evidence during the relevant time period of any emotional or physical danger to the children. M.B.'s parenting abilities were not called into question. He was raising another family with his wife, doing his best to remain employed,[7] and attending Amarillo College. His separation from his wife at the time of the final hearing should not be considered an unstable environment. In fact, M.B. testified that his wife was supportive and that Z.B. and Z.B. were "good helpers" with the twins.

There was no evidence that the existing parent-child relationship was inappropriate. To the contrary, the evidence showed that M.B. and his children enjoyed their visits and it was their biological mother that caused the children concern. There was evidence that M.B. worked his services while in Killeen and did his best to comply thereafter. He paid some child support until his financial situation suffered due to periods of unemployment and his foot injury. He testified that if his children had been placed in Amarillo, he would have been able to comply with his visitation. His lack of transportation caused him to miss his unsupervised visits which eventually led to termination of his parental rights.

M.B. testified he wished to have his visitation reinstated. Considering that there was no foreseeable adoption for the children and no chance of a permanent and stable home on the horizon, the Department's action to irrevocably terminate M.B.'s relationship with his children was an extreme measure. The evidence did not establish

---

[7] He was suspended from one job for taking time off to work his services. He had to work to support all his children and did his best to work his services until his transportation issue made his situation difficult. Parents faced with termination proceedings are often on the horns of a dilemma.

that he was an unfit parent. The Department's transition from the goal of reunification to termination based on the record before us was not in the children's best interest. The presumption that the children's best interest is served by preserving the parent-child relationship was disregarded. We conclude the trial court's best interest finding is not supported by clear and convincing evidence. Issue three is sustained.

CONCLUSION

Accordingly, the trial court's order terminating M.B.'s parental rights to Z.B. and Z.B. is reversed and we hereby render that the Department's petition for termination be denied. The cause is remanded to the trial court for further proceedings regarding the terms and conditions of M.B.'s possession of and access to Z.B. and Z.B. and for a determination of M.B.'s child support obligations.


                                                    Patrick A. Pirtle
                                                    Justice


Campbell, J., concurring in judgment only.