**Opinion filed January 27, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00163-CV
_____

## IN THE INTEREST OF C.W., C.W., AND F.S.W., CHILDREN

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV 1710402**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order of termination with respect to the parental rights of the parents of C.W., C.W., and F.S.W.  The children's mother and the biological father of two of the children appealed to this court.[1]  On appeal, the mother presents one issue in which she challenges the sufficiency of the evidence, and the father presents two issues in which he challenges the sufficiency of the evidence.  We affirm in part, and we reverse and remand in part.

---

[1]The biological father of the eldest child (C.W.1) voluntarily relinquished his parental rights and did not appeal.  Consequently, in this opinion, when we refer to "the father," we are referring to the father who filed this appeal: the biological father of the two youngest children (C.W.2 and F.S.W.).

*Procedural Background, Termination Findings, and Standards*

In 2017, the Department of Family and Protective Services filed a suit affecting the parent–child relationship (SAPCR) in which it sought the termination of the parents' rights to the three children involved in this case. In 2019, the trial court entered a final SAPCR order in which it appointed the Department as the children's permanent managing conservator, appointed the parents as possessory conservators with limited rights, and denied all other relief. In February 2021, the Department filed a petition to modify the 2019 SAPCR order. In the petition to modify, the Department alleged termination grounds pursuant to Section 161.001(b) and Section 161.004 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2021), § 161.004 (West 2014).[2]

In July 2021, the trial court conducted a hearing on the petition to modify and, in August 2021, signed the order of termination that is at issue in this appeal. The trial court's order of termination includes termination findings made pursuant to both Section 161.001(b) and Section 161.004 of the Texas Family Code. The trial court found, pursuant to Section 161.004, that "there has been a material and substantial change of circumstances of the [parents] and the children since entry of the Prior Order." *See id.* § 161.004(a)(2). The trial court also found that the mother and the father had committed one of the acts listed in Section 161.001(b)(1)—specifically, that the mother and the father had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the

---

[2]We note that Section 161.004 sets out the requirements for termination of "the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship." FAM. § 161.004(a). Section 161.004 has been regarded as a mechanism through which the Department may, upon proving a material change in the circumstances of an affected party, defeat a parent's claim of res judicata when the Department seeks termination after a prior petition seeking termination was denied. *In re K.G.*, 350 S.W.3d 338, 349 (Tex. App.—Fort Worth 2011, pet. denied).

children's removal from the parents for abuse or neglect. *See id.* § 161.001(b)(1)(O). Additionally, the trial court found that termination of the parents' parental rights would be in the best interest of the children. *See id.* §§ 161.001(b)(2), .004(a)(4).

In their appellate issues, the parents challenge the findings made by the trial court. To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or

omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Evidence at Trial*

At the 2021 bench trial on the petition to modify, the trial court first addressed a Rule 11 agreement that involved the mother's parental rights. *See* TEX. R. CIV. P. 11. The mother's attorney stated on the record that she had circulated a Rule 11 agreement and that all parties had agreed to its terms. The written agreement was not offered at trial, but the mother's attorney stated in open court that the parties agreed to the following:

> [T]hat the parental rights of [the mother] will be terminated on O grounds only and no additional grounds, and we would ask that while the children remain in care, prior to an adoption, that [the permanency case manager for the children] provide monthly pictures and email updates to [the mother], and then we also agreed that [the mother] not be present today.

Counsel for the Department confirmed that the parties had entered into a Rule 11 agreement and that the terms of the agreement were accurately set forth in open court by the mother's attorney. The father's attorney and the attorney and guardian ad litem for the children also confirmed their participation and joinder in the Rule 11 agreement.

The trial court then stated that the parties had "announced on the record a Rule 11 Agreement providing for the mother's rights to be terminated only on the 161.001(b)(1)(O) grounds of the Texas Family Code." The mother's attorney acknowledged that the trial court's summation of the Rule 11 agreement was accurate.

After the discussion about the Rule 11 agreement, the Department called one witness to testify: Hailey Smith, the permanency case manager. Smith acknowledged the Department's participation in, and agreement to, the Rule 11 agreement. Smith testified further that the mother had not completed the services in her service plan and that it would be in the children's best interest for the mother's parental rights to be terminated.

With respect to the father, Smith acknowledged that "at the beginning of this case," a family service plan was created for the father and was made an order of the court. No family service plan was offered into evidence. However, it appears from Smith's testimony that she was referring to the father's 2017 family service plan because she referenced the father's 2018 participation in individual counseling as required by his service plan.

Smith testified that the father did not comply with his service plan because he had not obtained stable housing. When Smith took over the case in June 2020, the father was living in his car. He then moved to a pop-up camper at a friend's house—where he lived for approximately six months; the camper was dirty and had no running water or working utilities. At the time of trial, the father was again living in his car. The father told Smith that he would soon be moving into a trailer house.

Smith testified that the father had done relatively well on other requirements of his service plan, except that he still maintained some contact with the mother (who continued to use illegal substances). The Department's main concern with the father was his inability to provide appropriate housing for the children—a concern that had not changed since the case began in 2017.

The father testified that he had steady employment and was still paying child support. He explained that, at the time of trial, he had rented a trailer house but that the landlord had postponed the father's move-in date for an extra week. The father testified that, the day before trial, he had confirmed with the office at Yellow Rose

5

Estates that "they are doing a make-ready on it." The father further explained that he was previously unable to obtain government housing during the pendency of this case because his rental history contained an eviction or two. He said that he had been trying his best for four years.

The father testified that he appreciated all that the foster parents had done for the children, but he indicated that he loved the children and wanted them back. The father considered all three of the children to be his even though he knew he was not the biological father of C.W.1. The father testified that he was present for C.W.1's birth and had "been his father ever since he come out." The father believed that the best thing for the children would be for him "to get this house" and for the children to be returned to him.

At the time of trial, the children had lived with the same foster parents for over three and one-half years. All three children had been placed together in the same foster home in 2017. The children were "very bonded" to their foster parents and were "very well taken care of." Smith indicated that this placement was a "potential adoptive placement." The foster mother's testimony indicated that the foster parents planned to adopt the children.

The trial court was asked to interview the children. The trial court spoke with C.W.1 and C.W.2, who were ten years old and nine years old, respectively. However, seven-year-old F.S.W. did not wish to talk to the trial court. After conferring with C.W.1 and C.W.2, the trial court stated on the record that it understood that these two children enjoyed living with their foster parents and would not mind staying there long-term but that they also enjoyed their visits with the father and expressed "some interest in possibly living with him."

On the Department's request, the trial court took judicial notice of the permanency report that was filed on November 23, 2020, including the information contained therein. The permanency report contained information about the children

and their progress, information about the parents and their progress, and the Department's recommendation for the children. In the November 2020 permanency report, which was signed by Smith and was the "most recent report" of the Department, the Department's recommendation for the children was that they remain in their current placement with the Department as their permanent managing conservator.

The permanency report showed that the mother tested positive for methamphetamine—multiple times—both before and after the 2019 SAPCR order. With respect to the father, the permanency report showed that the father did not have stable housing. The report also showed, however, that all of the father's drug tests were negative, that the father attended all of his biweekly visits with the children, that the father had a steady job, and that the father had provided items for the children when he was financially able to do so.

We note that, other than the November 2020 permanency report, the trial court was not asked to take judicial notice of evidence from a previous hearing. Furthermore, nothing in the record indicates that the trial court considered any other previously presented evidence. *See* FAM. § 161.004(b) (providing that, at a hearing under Section 161.004, "the court may consider evidence presented at a previous hearing").

*Analysis*

As we stated above, the termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). "Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'" *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). We carefully scrutinize termination proceedings, and we strictly construe involuntary termination statutes in the parents' favor. *Id.*

7

*Father's Appeal*

In his first issue, the father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that there was a material and substantial change in the circumstances of the parents or the children. In this same issue, he also challenges the legal sufficiency of the evidence to support the trial court's finding that the father failed to comply with the provisions of a court order that established the actions necessary for him to obtain the return of the children; he specifically contends that there was no evidence that a court order or court-ordered family service plan applied after the 2019 SAPCR order denying any request for termination.

When the Department seeks termination after a trial court's prior denial of termination, the Department is not limited to proceeding under Section 161.004. In such a situation, the trial court may terminate parental rights (1) under Section 161.001, which requires clear and convincing evidence of acts or omissions having occurred since the denial, or (2) under Section 161.004, which requires clear and convincing evidence of an act or omission under Section 161.001 that occurred before the denial and evidence of a material and substantial change since the denial. *In re J.P.*, No. 11-20-00209-CV, 2021 WL 865197, at *2 (Tex. App.—Eastland Mar. 9, 2021, pet. denied) (mem. op.); *In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *In re K.G.*, 350 S.W.3d 338, 352 (Tex. App.—Fort Worth 2011, pet. denied). Here, the Department sought termination under both sections.

We will first address Section 161.004. To rely on evidence of conduct that occurred prior to an earlier order denying termination, the Department must prove that the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order have "materially and substantially changed since the date that the order was rendered." FAM. § 161.004(a)(2). Here,

the trial court found that the circumstances of the parents and the children had materially and substantially changed. However, after reviewing all of the evidence presented, we can find no evidence to show that the circumstances of the parents or the children had materially and substantially changed since the date of the 2019 SAPCR order. Therefore, we cannot uphold the finding of the trial court under Section 161.004 and, in considering Section 161.001(b)(1), cannot consider conduct that occurred prior to the 2019 SAPCR order denying termination. *See In re D.N.*, 405 S.W.3d 863, 871 (Tex. App.—Amarillo 2013, no pet.).

We are thus left with a finding that the father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See* FAM. § 161.001(b)(1)(O). To uphold this finding, we must limit our consideration of the evidence to the relevant timeframe: after the 2019 SAPCR order denying termination. *D.N.*, 405 S.W.3d at 871. The Department did not offer any family service plan into evidence, and the testimony of the permanency case manager alluded to a court-ordered family service plan that was created "at the beginning of this case" in 2017. We can find no court order in the record to show that, after it entered the final SAPCR order in 2019, the trial court ordered the father to participate in services or comply with the terms of a family service plan. The Department must provide some evidence that the service plan with which the parent must comply was incorporated into a court order that specifically established the actions necessary for the return of the child. *D.N.*, 405 S.W.3d at 878; *In re C.L.*, 304 S.W.3d 512, 515–17 (Tex. App.—Waco 2009, no pet.); *see* FAM. § 161.001(b)(1)(O). In this case, the Department failed to present any evidence that a court order specifically establishing the actions necessary for the father to obtain the return of the children, such as a *court-ordered* family service plan, was in effect after the 2019 final SAPCR order. Because the evidence does not show that such a

court order existed, it follows that the evidence also does not show that the father failed to comply with the provisions of a court order.

Accordingly, we conclude that there is no evidence from which the trial court could have found by clear and convincing evidence that, after the date of the 2019 SAPCR order, the father failed to comply with the provisions of a court order. Thus, even when viewed in the light most favorable to the finding, a rational trier of fact could not have formed a firm belief or conviction that a finding under subsection (O) was true. *See J.P.B.*, 180 S.W.3d at 573.

Because the evidence in this case is insufficient to support the finding made by the trial court pursuant to Section 161.004 and is also insufficient to support the finding made by the trial court pursuant to Section 161.001(b)(1)(O), we sustain the father's first issue on appeal. We do not address the father's second issue, in which he challenges the factual sufficiency of the evidence to show that termination of his parental rights would be in the children's best interest, as that issue is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1. This court's ruling does not alter the trial court's appointment of the Department as the children's managing conservator. *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

*Mother's Appeal*

In her sole issue on appeal, the mother contends that, despite the Rule 11 agreement, the evidence was insufficient to show that termination of her parental rights was in the best interest of the children. The mother asserts in her appellate brief that "there was an agreement of some sort that [her] rights were not terminated under other grounds besides 'O'" but that "the evidence of best interest fell by the wayside." We cannot agree with the mother's contention.

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, an agreement entered on the record in open court is enforceable. The agreement announced in open court in this case was an agreement relating to the termination of the

mother's parental rights. The mother's attorney acknowledged that the parties had agreed "that the parental rights of [the mother] will be terminated on O grounds only and no additional grounds." This statement, along with a statement that the children would be adopted, indicated that the parties had agreed to the termination of the mother's parental rights. When the trial court announced that the parties' Rule 11 agreement provided for the mother's parental rights to be terminated, the mother's attorney agreed that that was indeed the parties' agreement.

Termination necessitates the consideration of a child's best interest. In addition to the necessary implication of the Rule 11 agreement, the permanency case manager testified that it would be in the children's best interest for the mother's parental rights to be terminated. The mother's father, who maintained contact with the children while they were in foster care, also testified that it would be in the children's best interest to terminate the parental rights of all of the parents. The children's attorney and guardian ad litem, when expressing his recommendation to the trial court, thanked the mother "for recognizing at this point what is best for her children." Furthermore, the evidence showed that, while in the care of their mother, the children lived in "horrible conditions" and were covered with fleas and lice. And, importantly, the evidence showed that the mother continued to use methamphetamine and engage in criminal activity.

The trial court, as the trier of fact, is the sole judge of the credibility of the witnesses. *A.B.*, 437 S.W.3d at 503. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the children's best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children; the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental

11

abilities of those involved; the plans for the children by the Department; the acts previously committed by the mother that endangered her children; the mother's continued drug use; and the instability of the mother's situation, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the mother's parental rights is in the best interest of the children. *See id.* Based on the Rule 11 agreement, the evidence presented at trial, and the deference that we must afford the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, we cannot hold in this case that the finding as to best interest is not supported by clear and convincing evidence. Accordingly, we overrule the mother's sole issue on appeal.

*This Court's Ruling*

We reverse the trial court's order insofar as it terminated the parental rights of Appellant father (D.W.) to his children, and we affirm the order of the trial court in all other respects. We remand this cause to the trial court for further proceedings with respect to Appellant father (D.W.) and his biological children (C.W.2 and F.S.W.). Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

JOHN M. BAILEY
CHIEF JUSTICE

January 27, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

12